**Kyriaki Cleo KYRIAZI, Plaintiff,**

v.

**WESTERN ELECTRIC COMPANY
et al., Defendants.**

**Civ. A. No. 475–73.**

United States District Court,
D. New Jersey.

May 5, 1977.

Judith P. Vladeck, Vladeck, Elias, Vladeck & Lewis, New York City, for plaintiff.

Edward P. Lynch, Pitney, Hardin & Kipp, Morristown, N. J., for defendants.

STERN, District Judge.

This is an employment discrimination suit brought pursuant to Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e *et seq.*

According to the complaint, plaintiff Kyriaki Cleo Kyriazi, an engineer who holds masters degrees in both business administration and engineering, was hired by Western Electric Company into the lowest classification within Western's Information Systems job progression. She was denied educational differential payments. Despite her excellent performance record, she was given a low and unfair rating. She was denied promotions. Finally, she was fired in retaliation for having filed a complaint with the New Jersey Division on Civil Rights.

On behalf of herself and all persons similarly situated, Kyriazi charges Western with discrimination against women in its hiring, job assignment, promotion and pay practices at its Kearny plant over the past six years. She alleges that although females constitute 34% of the employees at Western's Kearny facility, 98% of the females are employed in office and clerical jobs and in the lower paying production operator classifications while less than 1% are employed in managerial, professional, technical or skilled jobs. She further charges that, until shortly before the filing of her complaint, Western actively perpetuated the classification of jobs on the basis of sex by advertising through sex segregated help wanted advertisements.

On July 16, 1975, a plaintiff class comprising some 4,000 women was certified.[1] And, on October 14, 1975, this Court ordered that the issues in the case be tried in two separate stages. At the initial stage, Western's liability to the named plaintiff and the class as a whole will be tried. If Kyriazi is successful at the first stage, a second trial will be conducted to determine relief due individual class members other than the named plaintiff. The litigation is still in the discovery stage.

Western has moved to compel Kyriazi to provide responsive and adequate answers to interrogatories. At issue are 14 interrogatories with numerous subparts. All attempt to elicit detailed information concerning the nature of Western's alleged discrimination against each one of the 4,000 members of the plaintiff class. Kyriazi, in opposition to the motion, asserted that the answers which she has provided are fully responsive, and, in any event, that she has provided all information which she has, thereby fulfilling her obligations under the federal discovery rules. Oral argument was heard on April 18, 1977, and the Court, ruling from the bench, denied, in part, Western's motion. This letter-opinion will explain more fully the Court's oral ruling.

Some background material will be helpful in putting the pending discovery dispute in perspective. This action was instituted in 1973. Since its inception, a steady stream of discovery disputes have been brought before the Court.

The long and tortuous course of use and abuse of discovery in this case is well illustrated by the last set of discovery disputes which required judicial resolution. The most dramatic episode in that series occurred when Western admitted, in open court, that its employees had tampered with important documents and evidence which Kyriazi had sought to discover.[2] Although

---

1. The class includes "all females who are now or at any time since June 9, 1971 have been employed by defendant Western Electric Company, or who have sought employment with said company during the pendency of this suit, at the Kearny Work Organization."

2. Plaintiff's counsel, on March 31, 1976, while conducting discovery on the Western premises, came upon certain documents—Requisitions for Personnel—the existence of which had theretofore been unknown to plaintiff. These Requisitions were forms sent by a company

Western conceded that it was liable for costs, including attorneys' fees, which plaintiff had incurred in connection with vindicating her claim that the documents had been altered, no agreement could be reached on the amount of costs due. Discovery within discovery was had; Western *deposed* counsel for Kyriazi on the matter. Agreement still could not be reached. Finally, a lengthy hearing was held, and the Court ordered Western to pay plaintiff costs and fees in the amount of $34,037.01. The matter did not end there, for plaintiff found it necessary to move to hold Western in contempt for failure to obey the order.[3]

The immediate background of the instant motion must also be briefly examined. In July of 1976, Western sought leave to serve the interrogatories which are at issue here. Leave was denied. The basis for the Court's ruling was that, inasmuch as plaintiff was under an order to submit a pretrial memorandum setting forth, in detail, all of her class and individual claims, the serving of the interrogatories would serve no purpose, especially in light of the fact that all of the information concerning class liability came from the defendant's own files.[4]

Western then sought, and was granted, a writ of mandamus from the Court of Ap-

supervisor to the Western Personnel Office when a supervisor had a position to fill within his department. Only three such Requisition forms were found, each stapled to Placement Lists which had but recently been made available to plaintiff through discovery. Because there were hundreds of Placement Lists, all showing staple markings, plaintiff's suspicions were aroused. She wanted to know the whereabouts of the remainder of the Requisition Forms.

The answer to this question seemed critical because *the Requisition forms contained blanks where a supervisor, by making an X mark in the appropriate space, could indicate whether he preferred a male to fill the slot, or a female, or whether he had no sex preference.*

At a conference scheduled before the United States Magistrate later that week, plaintiff's counsel, Ms. Vladeck, expressed concern about what she considered to be tampering with the evidence, that is, the detachment of the requisition forms from the placement lists. Mr. Lynch, counsel for Western, and Ms. Vladeck attempted to work the matter out *inter sese,* and on April 8th, Western Electric turned over to plaintiff some two thousand requisition forms. Upon examination of these forms, Ms. Vladeck's suspicions were further excited. It appeared that the forms had been altered to obscure the fact that supervisors using the forms had indicated sex preferences, and to obscure the particular sex preference which the supervisor had indicated. Unlike the three forms discovered on March 31st, many of the forms had X marks, in different colored inks, in all three sex preference blanks—M, F, and M or F.

The following day, plaintiff brought an emergent application before the Court charging that the forms had been deliberately and recently altered by Western Electric. Although counsel for Western denied that the forms had been recently altered, the Court deemed it appropriate to give plaintiff an opportunity to have an expert examine the documents in order to sub-

stantiate the claim of recent alteration, and to protect the forms and from possible further alteration. Accordingly, the Court ordered these documents removed from Western's possession, granted temporary custody of the forms to plaintiff, and authorized her to engage in discovery to support her charges that the Requisition Forms had been improperly withheld and altered.

Plaintiff proceeded with her investigation and presented an Order to Show Cause why Western Electric should not be punished for contempt. She maintained that she could prove that the Requisition Forms had been altered between the time they had been requested and the time they had been turned over. A return date was set for June 17th.

Two days before the return date, counsel for Western Electric requested an opportunity to appear before the Court. He conceded that the Requisition Forms had been recently altered. Furthermore, he conceded that Western Electric employees may have committed perjury in deposition testimony concerning the forms.

3. Kyriazi was awarded the costs and fees incident to this motion as well.

4. This Court's order of July 16, 1975 reads, in relevant part:

> . . . plaintiff shall, not later than November 17, 1975, serve upon defendants and file with the Court a pretrial memorandum setting forth each claim being asserted on behalf of the class, and stating precisely what is alleged to have been discriminatorily denied to plaintiff Kyriazi, and to the class, and setting forth and delineating proofs by which plaintiff intends to substantiate the contentions raised on behalf of plaintiff Kyriazi, and the class, which said pretrial memorandum shall include or describe copies of each and every document upon which plaintiff intends to rely in proving such claims of the plaintiff Kyriazi, and the class, at trial, . . .

peals. That Court was apparently not informed of the prior discovery order, nor was it given a copy of plaintiff's pretrial memorandum in which she sets forth all of her factual contentions and demonstrates how she intends to prove them. In any event, the Court of Appeals held that information sought through the interrogatories was relevant to a possible defense by Western at the class liability stage of the trial:

> Western may attempt to rebut plaintiff's allegations of classwide discrimination by showing that it was not guilty of discrimination in one or more instances which are alleged to fall within the pattern. Without discovering how it is alleged to have discriminated against individual class members, however, Western would have to defend its actions against a myriad of hypothetical challenges. On the other hand, if it is allowed to serve the proposed interrogatories it can offer plaintiff's answers at trial, and then defend its actions against specific and concrete challenges.

*Western Elec. Co., Inc. v. Stern,* 544 F.2d 1196, 1199 (3rd Cir. 1976).

Upon application by the plaintiff for reargument or clarification, that Court, for the first time, was provided with plaintiff's lengthy pretrial memorandum. The Court indicated that it had not ruled on whether "the information provided to Defendant by Plaintiff's pretrial memorandum . . . adequately reveal[s] to Defendant the nature of Western's discrimination against individual members of the class." *Western Elec. Co., Inc. v. Stern,* 551 F.2d 1 (3rd Cir. 1976). The Court of Appeals then declined to express any opinion on the question of what might constitute satisfactory responses to the interrogatories.

> This question must initially rest in the sound discretion of the district court . . . It presumably will be resolved in accordance with the court's view of such factors as whether the requested discovery, including any which would require further discovery, investigation, or compilation, would be unduly burdensome, and whether the assertions or information sought is easily accessible to Western. *See 4A Moore's Federal Practice, Para. 33.20.*[5]

*Id.*

The question which the Court of Appeals anticipated was brought before this Court for resolution: Are Kyriazi's answers to the interrogatories adequate?

A careful examination of one of Western's interrogatories and Kyriazi's answers will put the problem into focus. Interrogatory 1(a) asks:

> The name and present address of each female employee you claim Western limited to Office and Clerical classifications or lower paying Production Operator classifications, while denying her better paid jobs as Managers, Professionals, Technicians, and Skilled Craftsmen.[6]

Kyriazi's answer is, essentially, "all women" who have held such positions. Western's claim that the answer is not responsive is really only a claim that Western does not *like* the answer given. Although it is true that Kyriazi has not listed names and addresses, identification of the women who have been so employed by Western can be made as easily by the company as by Kyriazi. See 4(a) Moore's Federal Practice ¶ 33.-20(3). Interrogatory 1(b) requests the department and job held by each woman listed in 1(a). Like 1(a), if Western desires this information, it may, for each woman employed in the job categories specified in 1(a), compile from its own records the departments and jobs in which they were employed. Kyriazi's answers to 1(a) and 1(b) are thus adequate.

---

5. Paragraph 33.20(3), 4A Moore's Federal Practice states:

> While a party must furnish in his answer to interrogatories whatever information is available to it, ordinarily a party will not be required to "make research and compilation of data not readily known to him"—at least if the data is equally available to the interrogating party.

6. This interrogatory parallels the allegations in Paragraph 27 of the Second Count of the Amended Complaint.

Interrogatory 1(c) seeks, for each female named in 1(a), the particular job Kyriazi claims such female was discriminatorily denied, and the date of such denial. Kyriazi's answer is, basically, that she does not know because Western does not post notices of job openings and because Western has not provided data (*e. g.,* requisition forms and placement lists) from which Kyriazi might develop the information sought.[7] Under these circumstances, her response must be deemed adequate.

Interrogatory 1(d) requests: For each female named in 1(a), state any and all qualifications which you claim entitled that female to each job you claim was discriminatorily denied to her and the dates on which she acquired those qualifications. Plaintiff cross-references to her answers to 1(a), 1(b) and 1(c) and claims that she does not have such information. Because the discovery provided to her by Western does not permit her to name particular jobs denied (see 1(c)), it is clear that her answer is as complete as possible when she states that she cannot name particular qualifications for such jobs. Her answer to 1(d) is therefore adequate.

Interrogatory 1(g) asks plaintiff to set forth in detail the factual basis for her contention that her claims are typical of the claims of the individuals listed in 1(a). And, Interrogatory 1(h) asks her to set forth each question of law and fact which she claims is common to the individuals listed in 1(a). Kyriazi's responses to these interrogatories refers, *inter alia,* to her pretrial memorandum. Western objects that the answer is totally unresponsive because plaintiff has identified no women in response to 1(a). The objection is not well-taken. "All women" is the answer to 1(a). The factual basis for the contention of typicality, the evidence to be adduced at trial, *is* set forth in the pretrial memorandum: it is the statistical disparities and the common employment practices to which they are subject. Her answers are thus, in this Court's view, responsive and adequate.

I have reviewed each of Western's interrogatories and all of Kyriazi's answers. I am persuaded that plaintiff has provided all information which she presently has,[8] with the exception of data which may be compiled as easily by Western. I am also persuaded that further discovery by Kyriazi

7. It should be noted that this does not mean that Kyriazi will not be able to prove these charges; statistical evidence and/or proof of particular practices would suffice to make a *prima facie* case. See *infra* at pp. 472–473.

8. Western contends that Kyriazi's counsel's communications with the members of the plaintiff class belie the assertion that plaintiff has produced all information which she presently has. In March of 1976, plaintiff's counsel, with leave of this Court, sent a letter to the class members informing them of the pendency of this action and providing them with a questionnaire-type form marked "CONFIDENTIAL" which they could use to inform counsel if, and how, they felt they had been discriminated against by Western. An unknown number of class members responded.

While Western concedes that the completed forms are confidential communications between attorney and client, Western maintains that the information contained thereon cannot be shielded from discovery. This Court disagrees.

First, to order disclosure of information conveyed to plaintiff's counsel raises serious and disturbing problems with respect to the attorney-client privilege. This is, of course, not a

case where a litigant seeks to shield from discovery the facts upon which she intends to rely by communicating those facts to her attorney; plaintiffs will *not* present individual claims at the class liability stage of trial.

Second, the interrogatories here at issue were directed to plaintiff *Kyriazi* to whom the information on the forms was not revealed. Thus, Kyriazi is entirely frank in reporting that she has provided Western with all information which she has.

Third, there are other avenues open to Western if it wants to discover the individual claims of each class member at this time. There is no bar to Western's deposing the class members or serving interrogatories on them.

Under these circumstances, and in the exercise of the Court's discretion, the Court will not order disclosure of the contents of the confidential questionnaires *at this time.* Western may, of course, renew its motion and the Court will order disclosure if, at any point, it appears that the information is necessary to Western's defense of the action. In any event, all individual claims will be fully disclosed to Western prior to the second stage of trial, if liability is found at the first stage.

of Western would not enable her to develop the kind of detailed information with respect to the 4,000 individual claims which Western would like spelled out; Western's extant records simply do not permit that kind of analysis. The sole remaining question is whether plaintiff must engage in further extensive discovery (presumably eliciting from each class member particulars of their employment situations) in order to provide Western with the information which it seeks. Phrased somewhat differently, the question for decision is whether defendant in a class action employment discrimination suit may, through the discovery process, compel the named plaintiff to organize her pretrial discovery so that she is able to isolate the individual and specific claims of each and every class member. To answer this question affirmatively, at least in the context of this suit, would, I believe, impose an unreasonable burden on Kyriazi.

██ It is well settled that plaintiff's *prima facie* Title VII case may be made in three ways. First, plaintiff may, through statistical proofs, show under employment of the protected class. See, *e. g., Bridgeport Guardians, Inc. v. Bridgeport Civil Service Comm'n*, 482 F.2d 1333 (2nd Cir. 1973); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970). Second, plaintiff may introduce evidence of a pattern of practices which produce or contribute to this situation. And, third, plaintiff may show a general practice by proving that individual women are qualified to do the jobs in question. See *generally Cooper, Rabb & Rabin, Fair Employment Litigation* 64–130 (1975).

Kyriazi has chosen all three approaches. As her amended pretrial memorandum shows, she is prepared to introduce statistical proof of discriminatory effects of Western's employment practices and specific practices that discriminate against women (*e. g.,* word-of-mouth referrals, sex-segregated want ads, vague and subjective standards). Kyriazi is also prepared to show that she herself faced discrimination at the hands of Western in hiring, rating, salary and promotion. (See Plaintiff's Amended Pre-Trial Memorandum at 131–154). She does not, however, seek to prove that each or any of the other 4,000 class members was discriminated against by introducing evidence as to the particular employment situation of any of the 4,000.

I do not disagree with Western's contention that the information sought—the particulars of each individual claim—would be "relevant" to the defense of the action. Indeed, the Court of Appeals has so held. But such information does not now exist and could not now be developed without further enormous expenditures of time and money by the plaintiff. After four years of discovery in this case, much of it judicially supervised, I believe that it is a proper exercise of discretion to call a halt to discovery at this juncture. No unfairness will result to Western. It is disingenuous in the extreme for Western to argue, at this stage of these proceedings that, without particulars of each individual claim, it will be compelled to defend against "2,400,000 hypothetical claims (600 jobs times 4,000 class members)!" (Db at 6) Plaintiff's case will be made with statistical proofs, proof of identified practices alleged to discriminate against women, and the individual claims of Kyriazi, the details of all of which have been exhaustively set forth in the pretrial memorandum. That—not hypothetical charges—is the case which defendant will be called upon to defend.

██ Defendant may, of course, as the Third Circuit has held, defend at the initial stage of trial "by showing that it was not guilty of discrimination in one or more instances which are alleged to fall within the pattern." Because Kyriazi has unequivocally stated in her interrogatory responses that all women have suffered discrimination, Western has broad leeway to rebut, through its own employment records, by showing that any, some, or all of its female employees were treated no differently than males, and were not subjected to any discrimination by reason of sex. It may even be that plaintiff's admitted inability to produce particular claims of particular females

may itself be of some evidential value to Western's defense, in the first stage. Be that as it may, the plaintiff can only give what she has, and she has been ordered to produce, and has already produced, everything that the defendant will be required to meet at trial.

For the reasons expressed, defendant's motion to compel answers to interrogatories is denied.