Kyriaki Cleo KYRIAZI, Plaintiff,

v.

WESTERN ELECTRIC CO., et al., Defendants.

Civ. A. No. 475–73.

United States District Court, D. New Jersey.

Nov. 17, 1981.

Vladeck, Elias, Vladeck & Engelhard, New York City by Judith P. Vladeck, and Margaret M. Young, New York City, for plaintiff.

Pitney, Hardin & Kipp by S. Joseph Fortunato, Joe Ramirez, Morristown, N.J., and Lawrence M. Joseph, New York City, for defendant.

## OPINION

STERN, District Judge.

Kyriaki Cleo Kyriazi filed this Title VII action on behalf of herself and a class of over 10,000 women on April 30, 1973, alleging a pattern of sex discrimination by Western Electric Company ("Western") at its Kearny, New Jersey facility. With the distribution in August 1981 of over $7 million to plaintiff class members, and with the institution of a four-year affirmative action program, the last chapter in this lengthy litigation has drawn to a close. The complexity of the case, the novelty of the later stages of the proceedings, and the significance of the settlement dictate the issuance of this opinion, which summarizes the proceedings and sets forth the stipulation of settlement and several orders of the Court.

Kyriazi, formerly employed as an engineer at the Kearny plant, alleged in her complaint that Western had discriminated against her on account of sex and had retaliated against her by terminating her employment when she filed charges of discrimination. She also alleged that Western discriminated systematically against women in ten areas: hiring, promotion transfer, lay-off, discharge, tuition refund benefits, participation in the Bell Systems Savings Plan, maternity leave, participation in training programs and opportunities for testing. Finally, she alleged that five employees at Western had harassed and abused her, thus conspiring to deprive her of her civil rights in violation of 42 U.S.C. § 1985(3) and tortiously interfering with her employment, in violation of state law.

With respect to the claims of systematic discrimination against women as a class, the Court, on July 16, 1975, certified a class consisting of:

"all females who are now or at any time since June 9, 1971, have been employed by defendant Western Electric Company, or who sought employment with said company during the pendency of this suit, at the Kearny works organization."

Discovery continued through mid-1977. Near the close of the discovery process, the Court held that Kyriazi was not required to continue discovery so as to isolate the individual and specific claims of each and every class member. *Kyriazi v. Western Electric Co.*, 74 F.R.D. 468, 471 (D.N.J.1977). See *Western Electric Co., Inc. v. Stern*, 544 F.2d 1196 (3rd Cir.), *rehearing denied*, 551 F.2d 1 (1976).

The Court severed the liability and damages portion of the action, and trial before the Court on Stage I—the liability stage—was conducted between July 7, 1977 and December 1, 1977. The Court found, with respect to both the individual and class claims, "that Western systematically denied women the employment opportunities it afforded men in the areas of hiring, promotion and participation in training programs; that it slotted women initially into the lower-paying 'women's jobs' and laid them off in disproportionate numbers in times of economic stress." *Kyriazi v. Western Electric Co.*, 461 F.Supp. 894, 898 (D.N.J.1978). The Court also, found that Kyriazi individually "was underrated, underpaid, and denied promotional opportunities by Western because of her sex; that she was harassed by

her male co-workers, and that she was terminated on account of her sex and in retaliation for having lodged a complaint of sex discrimination." *Id.* The individual defendants were found liable under section 1985(3) and state law. *Id.* at 949–51.[1]

On February 21, 1979, the beginning of Stage II—the remedy stage—of the proceedings, the Court directed that Western, at its expense, send notice to all class members pursuant to Fed.R.Civ.P. 23(d)(2). All class members still employed at Western or whose addresses were known to Western were sent a notice and a proof of claim form together with a prepaid envelope. Remaining class members, primarily those who were never employed by Western and former employees who had changed address, were located, if possible, by use of their Social Security numbers, in cooperation with the Social Security Administration. Notice was also published in the Sunday edition and in three weekday editions of six local newspapers for two consecutive weeks. All forms of notice made clear that a class member could not participate in Stage II of the action unless she filed a proof of claim form with the Court postmarked no later than April 9, 1979. In order to explain more fully the status of the lawsuit to class members still employed by Western, the Court directed that counsel for the plaintiff class be permitted by Western to enter the Kearny plant at least once during each shift to meet with class members and discuss the suit. The Court also directed that no class member be denied pay or other benefits for time spent attending such a meeting. Western was prohibited, of course, from retaliating against any woman based on her participation in this action.

The Court's objectives at the beginning of Stage II were, first, to expedite the appellate process by entering a final order with respect to liability which included an injunction prohibiting those practices found to be discriminatory, and, second, to establish a mechanism for adjudicating the individual remedy claims of the plaintiff class members.

Named plaintiff Kyriazi's Stage II remedies were to be included in the final order embodying judgment as to Stage I. The method for computing Kyriazi's back pay and entitlement to reinstatement were set forth in this Court's opinion of September 13, 1979, which was rendered after a hearing on the issue of her individual damages. *Kyriazi v. Western Electric Co.*, 476 F.Supp. 335 (D.N.J.1979). Pursuant to that opinion, the parties calculated that Kyriazi would receive a back pay award and interest of $103,506.75, and that she would be entitled to reinstatement to a senior engineering position with all benefits and seniority as if she had been employed continuously by Western and promoted to the senior position in 1971. These remedies were set forth in an order of October 9, 1979, attached as Appendix A. The order also required five individual defendants to pay Kyriazi $1,500 each as punitive damages, and prohibited Western from indemnifying those defendants. *See id.* at 340–41. It also entered judgment on behalf of the plaintiff class as to Western's liability for classwide discrimination, and on behalf of Western with respect to certain claims of the plaintiff class which the Court rejected. Counsel fees were awarded against Western for Kyriazi's individual case and for Stage I of the class action.

In the meantime, the Court established a procedure for adjudication of the Stage II claims. The Court appointed three Special Masters pursuant to Fed.R.Civ.P. 53(a). Bernard Hellring, Esquire, was appointed to serve as the Administrative Special Master, with particular responsibility for assigning hearings among the other Special Masters. These other masters, Thomas F. Campion, Esquire, and Bruce I. Goldstein, Esquire, were responsible for conducting hearings on each claim and preparing re-

---

1. The finding of liability under section 1985(3) was vacated following the subsequent decision of the Supreme Court in *Great American Federal Savings & Loan Assn. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). *Kyriazi v. Western Electric Co.*, 473 F.Supp. 786 (D.N.J.1979).

ports and recommendations. A fourth master, Lawrence S. Horn, Esquire, was subsequently appointed to serve with Mr. Campion and Mr. Goldstein. Western was responsible for compensating the masters at rates set by the Court. Detailed guidelines for the adjudication of the claims of class members were set forth in an "Order of Reference and Guidelines for Special Masters." See *Kyriazi v. Western Electric Co.*, 465 F.Supp. 1141 (D.N.J.1979). The Court subsequently ordered that Western compensate all those whom it still employed—class members as well as its own witnesses—for time spent testifying at Stage II hearings. *Kyriazi v. Western Electric Co.*, 469 F.Supp. 672 (D.N.J.1979).

A portion of the Guidelines provided that class members who did not file proof of claim forms by the stated deadline would be excluded from consideration as to individual damages and other individual relief unless they showed "good cause which shall not include neglect." *Kyriazi v. Western Electric Co.*, 465 F.Supp. at 1151, ¶ 3. The initial hearings conducted by the masters were to consider whether "late filers" could demonstrate good cause for their delay; in other words, the initial hearings determined participation in Stage II rather than the remedy due a participant. Each master filed reports and recommendations following these hearings. Both plaintiffs and Western had an opportunity to appeal to the Court from an adverse decision by a master. Counsel for the plaintiff class represented each applicant appearing before a Special Master who desired such representation.

Once the late-filer hearings were concluded, the Special Masters began individual liability and damage hearings with respect to those class members who were "rejected applicants." Rejected applicants, that is, women who applied for employment at Western but were turned down, constituted a group of women for whom determination of damages was relatively easy. If a rejected applicant set forth a *prima facie* case, which merely required demonstrating that she applied for employment at Western and was turned down, and Western was

unable to establish a defense set forth in the Order of Reference, see *id.* at 1152, ¶ 11(a), a back pay award could be determined by computing pay from the date she should have been hired until the date when she found a job, or, with due diligence, should have found a job.

With respect to non-rejected applicants—woman actually employed at Western—the Court directed Western to computerize its personnel records so that information necessary to adjudicating these claims would be readily available to the Special Masters. Once the claim of an aggrieved employee was assigned to a Special Master, an evidentiary hearing would be conducted within sixty days. The masters would be required to file a report and recommendation not later than thirty days from the date of the hearing. Parties would then have ten days within which to file objections, which would then be heard by the Court.

A large number of hearings were conducted between late 1979 and June 1980, and 108 final judgments were entered on behalf of those prevailing class members who were rejected applicants. The awards for rejected applicants totalled $234,271.25. Each judgment was certified for appeal pursuant to Fed.R.Civ.P. 54(b). The claims of sixty rejected applicants had not been adjudicated by June 1980, however, and only a few of the claims of woman actually employed at Western during the actionable period had reached the hearing stage, with none having been adjudicated.

On June 6, 1980, while the Stage II proceedings were in progress and the Stage I judgment was on appeal before the United States Court of Appeals for the Third Circuit, counsel for the plaintiff class entered into a stipulation of settlement with Western, which is set forth as Appendix B. In brief, Western agreed to pay into Court the sum of $7 million to be distributed among all class members who had properly filed notice of claim forms, and further agreed to give priority consideration for hiring to those class members who had filed timely claim forms and had been rejected for em-

ployment or had been laid off by Western and not rehired. Western also agreed to implement an extensive four-year affirmative action program, the details of which appear as Exhibit C to Appendix B. Plaintiff's counsel fees were in no way covered by the settlement. *See Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir. 1977). Under Fed.R.Civ.P. 23(e), settlement was conditioned upon approval of the Court.

The Court ordered that notice of the settlement be mailed to all class members, including those who had not filed proof of claim forms, and that notice be published in area newspapers. See Exhibits D and E to Appendix B. Class members were required to file objections no later than July 21, 1980, and a final hearing on approval of the settlement was scheduled for July 24, 1980. Numerous objections were received, most of them from women who were excluded from receiving money from the settlement fund because they failed to file a proof of claim form.

■ On July 24, 1980, the Court overruled virtually all of the objections and approved the settlement. The Court ruled, however, and the parties agreed, that any woman who had filed a timely objection and could demonstrate that she had failed to file a proof of claim form for good cause, which "shall include only personal incapacity by reason of illness or hospitalization, nonreceipt of notice, or the mailing of a claim form which was not received by the Clerk," would be eligible to participate in the settlement fund. Pursuant to this provision, about one hundred women were given the equivalent of late-filer hearings before Special Masters Horn and Campion, and many were included among those eligible to receive money from the settlement fund. The Court approved the portion of the settlement which excluded from participation in the fund women who had not filed a timely claim form, and also stated that the settlement "is deemed to be in full satisfaction of any and all claims ... which plaintiff or any member of the class had ... through the effective date of execution of the Order of Settlement...." The final

order of settlement was executed on October 1, 1980. See Appendix C. The parties subsequently agreed on an award of attorney's fees and disbursements of approximately $2 million.

The Court appointed Mr. Campion to serve as Fiscal Administrator of the settlement fund. The order of appointment, See Appendix D, set forth criteria for investment of the fund and required that the expenses for administration of the fund be paid out of the interest generated by the fund. Mr. Campion was also directed to devise a formula for distribution of the fund to eligible class members. In his capacity as administrator, Mr. Campion negotiated an agreement with the Internal Revenue Service to facilitate withholding of taxes with respect to distribution of the fund. See Appendix E. Agreements were also reached with state tax authorities. A formula for distribution, reprinted as Appendix F, took into account such factors as seniority, promotions, and education. This formula was later amended slightly to remove ambiguities with respect to the award of promotion credits.

■ Eleven women who were excluded from participation in the distribution for failure to file proof of claim forms without good cause appealed to the Third Circuit this Court's order overruling their objections. Distribution of the settlement fund and implementation of the affirmative action plan were stayed pending this appeal. On April 30, 1981, the Court of Appeals held that the Court's proof of claim procedure was appropriate, and approval of the settlement was affirmed. *Kyriazi v. Western Electric Co.*, 647 F.2d 388 (3d Cir. 1981). Distribution of the settlement was again stayed pending the running of time for a petition for certiorari to the United States Supreme Court. When this time expired the fund was distributed. The Court will continue to monitor the affirmative action program.

APPENDIX A

ORDER

It is on the 9 day of October, 1979, for the reasons set forth in, and in accordance with,

this court's opinions of October 30, 1978 and September 13, 1979,·

ORDERED that plaintiff Kyriazi is to receive back pay in the amount of seventy-four thousand, nine hundred thirty-three dollars and thirty-two cents ($74,933.32) and interest thereon in the amount of twenty-eight thousand, five hundred seventy-three dollars and forty-three cents ($28,573.43), for a total of one hundred three thousand, five hundred six dollars and seventy-five cents ($103,506.75) from defendant Western Electric;

ORDERED that plaintiff Kyriazi is to be reinstated to the position of Senior Information Systems Staff Member at Western Electric's Kearny plant, with all attendant benefits and seniority as if she had been continuously employed by defendant Western Electric since April, 1965, and had been promoted to the position of Senior on March 1, 1971;

ORDERED that defendants Wilser, Boyd, Snyder, Armstrong and Liu each pay to plaintiff Kyriazi the sum of one thousand five hundred ($1,500.00) dollars as punitive damages;

ORDERED that defendant Western Electric shall not indemnify defendants Wilser, Boyd, Snyder, Armstrong or Liu in any part for payments made by the individual defendants to plaintiff Kyriazi in accordance with this order;

ORDERED that judgment be and is hereby entered on behalf of plaintiff class as to defendant Western Electric's liability for discrimination in the areas of hiring, promotion, participation in job training programs, layoffs, discharge, transfer into Kearny, and opportunities for testing;

ORDERED that judgment be and is hereby entered on behalf of defendant Western Electric with respect to the claims of plaintiff class with respect to discrimination in maternity leaves, college tuition refund benefits, participation in the Bell System's Savings Plan, and the apprenticeship training program and plant trades training program;

ORDERED that defendant Western Electric's motion to decertify the class to exclude therefrom applicants for employment never hired by Western Electric be and is hereby denied, and the Court's certification of the class consisting of "all females who are now or at any time since June 9, 1971, have been employed by defendant Western Electric Company, or who sought employment with said Company during the pendency of this suit, at the Kearny works organization" be and is hereby reaffirmed;

ORDERED that defendant Western Electric shall pay to counsel for plaintiff attorney's fees, expenses and costs pursuant to 42 U.S.C. § 2000e–5(k) in the amount of Six-hundred and sixty-three thousand, eight hundred and seventy dollars and ninety-eight cents dollars ($663,870.98), less previous payments made under prior orders of this Court in the amount of two hundred eighty thousand, eight hundred thirty-four dollars and forty-nine cents ($280,834.49);

ORDERED that defendant Western Electric be and is hereby enjoined from continuing its practices with respect to those aspects of its employment policies found by the Court herein to discriminate against plaintiff class;

ORDERED that the foregoing provisions of this Order be and are hereby stayed for a period of thirty (30) days from the date hereof, and thereafter pending appeal of the provisions of this Order;

ORDERED that, pursuant to F.R.Civ.P. 54(b), final judgment be and is hereby entered with respect to all claims of plaintiff Kyriazi against all defendants, there being no just reason for delay of the final resolution of Kyriazi's claims;

ORDERED that, pursuant to F.R.Civ.P. 54(b), final judgment be and is hereby entered with respect to those claims of plaintiff class as to which judgment is being entered on behalf of defendant Western Electric, there being no just reason for delay, particularly because in the event of reversal of said rulings, the Stage II mechanism for trying individual claims is presently in position.

## APPENDIX B

## STIPULATION OF SETTLEMENT

WHEREAS, on April 30, 1973, this action was instituted by plaintiff Kyriaki Cleo Kyriazi (hereinafter "plaintiff") against the defendant Western Electric Company, Incorporated (hereinafter "Western Electric"), alleging individually and on behalf of all persons similarly situated discrimination on the basis of sex at Western Electric's Kearny Works in New Jersey (including the Clark Shops and hereinafter collectively referred to as the "Kearny Works") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and

WHEREAS, by Order dated July 16, 1975, the District Court certified this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure as a class action encompassing all females who were then or who at any time since June 9, 1971, have been employed by Western Electric or sought employment with Western Electric at the Kearny Works; and

WHEREAS, following a bifurcated trial (the trial commenced on July 7, 1977 and concluded in December 1977) on the issues of class liability and relief (reserving for later decision the specific relief to be awarded individual class members) and liability and damages with respect to the plaintiff, an Opinion was issued by the District Court on October 30, 1978 holding Western Electric liable for discrimination on the basis of sex with respect to the plaintiff class and with respect to the plaintiff, all as more fully set forth in its Opinion entered on October 30, 1978, *Kyriazi v. Western Electric Co.*, 461 F.Supp. 894 (D.N.J.1978); and

WHEREAS, the District Court by Opinion and Order dated February 21, 1979, as amended March 6, 1979, adopted a procedure for the determination of the appropriate relief for all class members ("Stage II"), *Kyriazi v. Western Electric Co.*, 465 F.Supp. 1141 (D.N.J.1979), requiring that all class members who sought to pursue their claims file a "Proof of Claim" form, certifying that they were members of the class, and answering questions concerning their claims; and

WHEREAS, the District Court appointed four Special Masters to conduct Stage II proceedings with respect to the over 2000 women who filed "Proof of Claim" forms, and as of June 6, 1980, 172 claims have been fully heard and confirmed by the District Court, and it is estimated that approximately five years may be required to complete hearings and determinations of the balance of the claims; and

WHEREAS, the District Court by Order of October 9, 1979, determined the named plaintiff's damages and the relief to which she was entitled against Western Electric, pursuant to hearings before the District Court; and

WHEREAS, the District Court by Order of October 9, 1979, also enjoined Western Electric from continuing those employment practices which the District Court had found unlawful; and

WHEREAS, both the plaintiff and the defendants have filed appeals with the United States Court of Appeals for the Third Circuit (now pending) regarding various aspects of the Order of the District Court issued on October 9, 1979, pursuant to its decision of October 30, 1978, as well as other Orders of the District Court issued prior and subsequent thereto, all such appeals being currently pending; and

WHEREAS, after extensive discussions the plaintiff and Western Electric now desire to settle and compromise this action and all individual and class claims which are asserted against Western Electric or which could have been asserted against Western Electric in this action;

NOW, THEREFORE it is hereby stipulated and agreed by and between the undersigned attorneys that all claims which are or could have been asserted in this action against Western shall be settled and compromised, subject to the approval of the District Court and according to the following terms and conditions:

*Settlement Fund*

1. This action is to be settled for the gross sum of seven million dollars ($7,000,000.00) (hereinafter referred to as the "Settlement Fund"), which sum shall be paid by Western Electric to the Fiscal Administrator of the Settlement Fund (hereinafter "Administrator") within seven (7) days of the execution by the District Court of an Order Regarding Tentative Approval of Stipulation of Settlement, a copy of which is attached hereto as Exhibit A. The Administrator shall be appointed by the District Court and such Administrator shall thereafter be responsible, in conjunction with the District Court, for the placement of the Settlement Fund monies in an interest bearing account(s) and for the subsequent allocation and distribution of the Settlement Fund. The Administrator will advise the parties of the proposed allocation and distribution and they may, if they so desire, comment or submit alternative proposals.

2. Any Administrator's fees, Special Masters' fees, attorneys' fees for counsel for the plaintiff, or any other costs or expenses arising in connection with the allocation and distribution of the Settlement Fund monies, including the costs and expenses of any proceedings incurred subsequent to the date of the receipt of the Settlement Fund in connection with the processing of any Stage II claims of class members before the Special Masters or the District Court, shall not be the responsibility of Western Electric, but shall be paid from the Settlement Fund and any interest accruing thereon. Such interest accruing from the Settlement Fund will first be used for the payment of these administration fees and expenses before any money is paid for that purpose from the Settlement Fund.

3. The monies paid into the Settlement Fund by Western Electric shall be distributed to and allocated among those class members who have filed timely Stage II proofs of claim with the Clerk of the District Court in response to the previous notices to the class (including those persons whose claims were filed late but who were found by the District Court to have shown good cause for the late filing). With respect to those persons who filed such timely proofs of claim, but whose only claim relates to Western Electric's alleged failure to grant them employment, so called "rejected applicants" (hereinafter "Applicants"), the agreement is as follows: (1) in those Applicant cases in which a hearing has been held before a Special Master and the decision of the Special Master has been issued and confirmed by the District Court prior to the date of the Order Regarding Tentative Approval of Settlement, the Applicant will receive payment from the Settlement Fund only of the amount, if any, which she has been awarded by the Special Master as confirmed by the District Court, and (2) no person shall receive any payment from the Settlement Fund as an Applicant if prior to the date of the Order Regarding Tentative Approval of Settlement her claim for monetary relief had been denied by the Special Master as confirmed by the District Court.

With respect to plaintiff Kyriazi, she will receive the money awarded to her by the District Court pursuant to the Order of October 9, 1979 ($74,933.32, plus interest) from the Settlement Fund.

4. No money shall be paid from the Settlement Fund to any person until such time as all terms and conditions of the Order of Settlement (attached hereto as Exhibit B) regarding the expiration of the right to appeal or the exhaustion of all appeals therefrom have been satisfied.

*Priority Consideration for Hiring*

5. Class members who filed timely Stage II proofs of claim and who are either (a) Applicants (other than those Applicants found not to be entitled to priority hiring by the District Court or, subsequent to the date of the Order Regarding Tentative Approval of Settlement, by the Special Masters) or (b) who were laid off by Western Electric and not rehired or, since their layoff, have not been offered reemployment at the Kearny Works, will be granted priority consideration for hiring if qualified for a job opening in accordance with Western

Electric's then current employment practices and subject to Western Electric's right to hire the best qualified available candidate whether or not that candidate's name is on any priority list, all as more fully set forth in Exhibit C attached hereto. In addition, any such claimant class member who was previously laid off and who has been rehired or may be rehired as a result of this priority consideration will, upon rehire, be given credit in her term of employment for previous credited service as of the date she was last laid off by Western Electric (but shall not be given credit in term of employment from the time of that layoff to the date of rehire), all as more fully set forth in Exhibit C attached hereto.

If any class member on the priority consideration for hiring list is denied a job vacancy because Western Electric does not consider her to be the best qualified candidate, she and the coordinator of the Affirmative Action Program (Exhibit D) shall be so informed, and the class member shall be informed by the coordinator of her right to appeal such denial pursuant to the procedures of the Affirmative Action Program.

### Affirmative Action Program

6. In addition to the establishment of the Settlement Fund and the priority consideration for hiring, Western Electric will also implement a special Affirmative Action Program (hereinafter referred to as the "Program") in the form annexed hereto as Exhibit D. The Program shall be effective for a period of four years from the date of entry of the Order of Settlement.

### Other Matters

7. As soon as possible after the date of execution of this Stipulation of Settlement, the parties shall submit the Order Regarding Tentative Approval of Stipulation of Settlement to the District Court for execution and filing. At that time, the parties shall also submit to the District Court a proposed form of Order Regarding Rule 23(e) Notice (attached hereto as Exhibit E) and a proposed form of Notice for mailing (attached hereto as Exhibit F) and a pro-posed form of Notice for publication (attached hereto as Exhibit F–1) providing for notice to class members of the proposed settlement and advising the class members of their right to object to the proposed settlement and to present such objections at a hearing to be conducted by the District Court.

8. Following the conduct of a hearing with regard to the proposed settlement by the District Court, and if the District Court grants final approval to the settlement pursuant to Rule 23(e), the parties shall present the Order of Final Approval and for Dismissal and Remand of Appeals (attached hereto as Exhibit G) to the District Court for execution and filing.

9. Following the execution and filing of the Order of Final Approval and for Dismissal and Remand of Appeals, the parties shall file a joint motion dismissing the appeals identified on the schedule attached hereto as Exhibit H and requesting that the matters be remanded to the District Court for entry of the Order of Settlement (but preserving the right to reinstate the appeals if the Order of Settlement is not entered or if the Order of Settlement becomes void by its terms because of an appeal by class members from the final approval of settlement).

10. Following the remand of the matters on appeal as set forth in the paragraph above, the parties shall present the Order of Settlement to the District Court for execution and filing.

11. Neither the execution of this Stipulation of Settlement, nor any other agreement or order referred to herein, nor any factual finding or legal conclusion rendered by the District Court in any phase of this lawsuit, shall be construed to be, or shall be admissible in any proceeding as evidence of, an admission by Western Electric of any violation of Title VII of the Civil Rights Act of 1964 or any local, state or other federal equal employment opportunity law or executive order or regulation.

12. Upon execution of this Stipulation of Settlement, the rights of the class mem-

bers shall be only as contained herein. Consistent therewith, the above described settlement is deemed to be in full satisfaction of any and all claims, monetary or otherwise including, but not limited to, all claims for damages, back pay, benefits, injunctive, declaratory or other relief, which were raised or which could have been raised against Western Electric relating to sex discrimination in employment at the Kearny Works under Title VII of the Civil Rights Act of 1964 or any local, state or other federal equal employment opportunity law or executive order or regulation, which plaintiff or any member of the class had or has from July 2, 1965 through the effective date of execution of the Order of Settlement and such settlement supercedes all prior findings of liability and orders for relief and shall also operate as an accord and satisfaction of any outstanding judgments or orders in this matter.

13. Each class member who receives a portion of the Settlement Fund will, as a condition of receiving the same, execute any acknowledgment of receipt or release as the District Court may require.

14. Following the allocation and distribution of the money in the Settlement Fund by the Administrator, counsel for the plaintiff shall provide Western Electric with such documents as are required to effectuate the satisfaction of those portions of the judgments in this matter which are satisfied by reason of this settlement and compromise.

15. Attorney's fees and costs to plaintiff's counsel for services in this litigation are not a subject of this stipulation, except for such fees and costs incurred in connection with the distribution of the Settlement Fund, and nothing contained herein affects the entitlement of plaintiff to such fees and costs as may be agreed upon by the parties or as awarded by the District Court for services rendered prior to the date hereof, subject to appeals, or the right of plaintiff to make application for fees and costs incurred for services rendered by plaintiff's counsel during the implementation of this Stipulation of Settlement.

16. In the event that for any reason the Order of Settlement is disapproved by the District Court, or approved but reversed on appeal, then at the option of either Western Electric or plaintiff this Stipulation of Settlement shall be null and void.

Exhibit A

ORDER REGARDING TENTATIVE
APPROVAL OF STIPULATION
OF SETTLEMENT

This matter having been opened to the District Court on May 20, 1980 upon the joint application of Vladeck, Elias, Vladeck & Engelhard, Attorneys for Plaintiff (Judith P. Vladeck, Esq., appearing) and Pitney, Hardin & Kipp (S. Joseph Fortunato, Esq., appearing) and Joe Ramirez, Esq. and Lawrence M. Joseph, Esq., Attorneys for Defendant Western Electric Company, Incorporated (hereinafter "Western Electric"), for tentative approval of the settlement of all class claims and the individual claim of plaintiff against Western Electric; and the parties having orally advised the District Court of the basic terms of settlement on May 20, 1980, and having thereafter entered into a Stipulation of Settlement dated June 6, 1980, a copy of which is annexed hereto; and the District Court having considered the proposed terms of settlement and good cause having been shown;

IT IS on this 6th day of June, 1980:

ORDERED that the proposed settlement as memorialized in the attached Stipulation of Settlement dated June 6, 1980, is granted tentative approval by the District Court; and it is further

ORDERED that final determination of whether the proposed settlement is fair, adequate and reasonable shall be reserved by the District Court pending notice pursuant to Fed.R.Civ.P. 23(e) and an opportunity for class members to present any objections to the proposed settlement; and it is further

ORDERED that a hearing with regard to final approval of the proposed settlement be held before the undersigned in Courtroom No. 1 in the United States District

Court, United States Post Office and Courthouse Building, Newark, New Jersey, 07101, at 10:00 a. m. on July 24, 1980, at which time and place any class member who has filed a written objection by mailing or delivering same to the Clerk of the District Court, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey, 07101 at least ten (10) days prior to the date of hearing shall be afforded an opportunity to be heard, either in person or through counsel, as to why the proposed settlement should not be granted final approval; and it is further

ORDERED that notice of the proposed settlement of the hearing thereon and of the right to file objections to the proposed settlement shall be given to the class members in a manner and form to be approved by the District Court; and it is further

ORDERED that any member of the class who fails to object in the manner specified above shall not be entitled to contest the approval of the proposed settlement and the Order entered thereon, and shall be deemed to have waived and shall be foreclosed from raising any objections she might have; and it is further

ORDERED that within seven (7) days of the date of entry of this Order Western Electric shall deposit with the Fiscal Administrator for the Settlement Fund appointed by the District Court (hereinafter the "Administrator") the gross sum of seven million dollars ($7,000,000) (hereinafter referred to as the "Settlement Fund"); and it is further

ORDERED that such Administrator shall thereafter be responsible, in conjunction with the District Court, for the placement of the Settlement Fund monies in an interest bearing account(s) and for the subsequent allocation and distribution of the Settlement Fund; and it is further

ORDERED that in the course of the allocation and distribution of the monies in the Settlement Fund, Western Electric will supply such information to the Administrator or the District Court in connection with its employees or prior employees as it has in its possession and as may be reasonably required by the Administrator or the District Court for use in and administration of the Settlement Fund; and it is further

ORDERED that Western Electric is hereby directed that, both prior to and at the time of payment of the Settlement Fund monies to the Administrator and at the time of distribution from the Settlement Fund by the Administrator or the District Court, Western Electric shall not withhold, collect, pay and/or report any federal, state and local income taxes, social security taxes, unemployment and disability taxes, or any other like sum which may be due and owing as a result of the payment of the Settlement Fund monies by Western Electric to the Administrator or the distributions from the Settlement Fund by the Administrator or the District Court, nor be responsible or liable for such withholding, collecting, paying and/or reporting; and it is further

ORDERED that in the event that final approval for the settlement is not granted by the District Court pursuant to Fed.R. Civ.P. 23(e), or if such final approval is granted but vacated or reversed on any appeal, all monies contained in the Settlement Fund and all interest accrued thereon, less any expenses for administration of the Settlement Fund, shall be returned to Western Electric within thirty (30) days of the District Court's denial of final settlement approval or the vacation or reversal of final approval on appeal; and it is further

ORDERED that all proceedings in this matter are hereby stayed effective the date of the execution of this Order, except in connection with settlement matters.

Exhibit B

PRIORITY CONSIDERATION
FOR HIRING

There shall be two lists (List "A" and List "B") containing names of individuals who shall be given priority consideration for hiring in accordance with Western Electric's then current employment practices.

a) List "A" shall contain the names, in order of their previous term of employment, of those class members who filed timely Stage II proofs of claim who have, since

June 9, 1971, been laid off and who have not, since their layoff, been offered reemployment at the Kearny Works (includes Clark shops).

b) List "B" shall be a consolidated list of the names of both

(1) Class members who were not offered employment with Western Electric and whose claims have been fully adjudicated prior to the date of this Stipulation of Settlement and who were determined by the Special Masters as confirmed by the District Court to be entitled to placement on the priority hire list, and

(2) Class members who were not offered employment with Western Electric and who have been determined by the Special Masters, subsequent to the date of this Stipulation of Settlement, to be entitled to placement on the priority hire list.

These women will be placed on the priority hire list in order of their "designated date," that is, the date they should have been hired by Western Electric (1) as determined by the Special Masters and confirmed by the District Court or (2) as determined by the Special Masters.

When, to meet the needs of the business, hiring is utilized, Western Electric shall first give priority consideration for employment to the individuals on List "A", in the order in which their names appear on that list, if they are qualified for the job opening in accordance with Western Electric's then current employment practices and subject to Western Electric's right to hire the best qualified available candidate whether or not that candidate's name is on List "A." Western Electric shall continue to give first consideration for hiring to the individuals on List "A" until all such individuals have been considered.

After all individuals on List "A" have been considered, Western Electric shall then give priority consideration for employment to the individuals on List "B", in the order in which their names appear on that list, if they are qualified for the job opening in accordance with Western Electric's then current employment practices and subject to Western Electric's right to hire the best qualified available candidate whether or not that candidate's name is on List "B." Western Electric shall continue to give first consideration to the individuals on List "B" until all such individuals have been considered. Thereafter, Western Electric's obligation as to priority consideration for hiring will terminate.

If any class member on the priority consideration for hiring list is denied a job vacancy because Western Electric does not consider her to be the best qualified candidate, she and the coordinator of the Affirmative Action Program (Exhibit D) shall be so informed, and the class member shall be informed by the coordinator of her right to appeal such denial pursuant to the procedures of the Affirmative Action Program.

An individual on List "A" who is rehired under the provisions of this Stipulation of Settlement shall, upon rehire, be given credit in term of employment for previous credited service as of the date she was last laid off by Western Electric but shall not be given credit in term of employment from the time of that layoff to the date of rehire. Nothing contained herein shall operate to preclude Western Electric from granting similar credit to any of its other employees.

An individual's name will be stricken from List "A" should such individual refuse an offer of reemployment for a job at or above the level she was at the time she was laid off. An individual's name will be stricken from List "B" should such individual become employed by or refuse an offer of employment with Western Electric.

The Coordinator and Deputy Coordinator will function with respect to Exhibit C of the Stipulation of Settlement in the same manner as they function under Exhibit D. The Company Administrator shall submit a report to the Court, Coordinator and plaintiff's counsel semi-annually for the next four (4) years, with detailed information as to its administration of Exhibit C. This report shall be subject to the same requirements of confidentiality as set forth in Article II.C. of Exhibit D to the Stipulation of Settlement.

## Exhibit C

## AFFIRMATIVE ACTION PROGRAM

I GENERAL PROVISIONS

II ADMINISTRATION

III GOALS FOR FILLING VACANCIES

IV PROMOTION

V HIRING

VI APPEAL PROCEDURE

VII STATUS OF CERTAIN JOBS

VIII TRAINING

IX TESTS

X LAYOFFS

XI MISCELLANEOUS

XII REPORTING

### I. GENERAL PROVISIONS

A. The terms of this Document shall be binding upon and have effect only at the Company facility known as the "Kearny Works," located in Hudson County, New Jersey and the "Clark Shop" located in Union County, New Jersey and only with respect to employees and prospective employees in the categories of jobs enumerated below:

(1) *Ungraded Employees*: department chiefs, section chiefs, engineers, information systems, PAE and Wage Practices, technicians (engineer associates and information systems associates).

(2) *Graded Employees*: salaried, craft workers, operative, service, technicians.

B. The Company shall give notice of this Affirmative Action Program to all current employees.

### II. ADMINISTRATION

A. The Company shall designate one or more of its employees to act as Company Administrator under this Document.

(1) The Company Administrator shall supervise all measures set forth herein and take those steps which he/she deems appropriate for the purpose of implementing the terms of this Document.

B. (1) The Court shall, with the advice and consent of the Company and plaintiff's counsel, (a) appoint an individual (other than an employee of the Company), who shall be designated as the Coordinator and (b) appoint an individual (other than an employee of the Company), who shall be designated as the Deputy Coordinator. The Deputy Coordinator shall function in the absence of the Coordinator or as otherwise directed by the Coordinator, consistent with the terms of this Document. The Company will deliver all reports contemplated by this Document to the Coordinator.

(2) Either the Company Administrator or the Coordinator may request a meeting with the other for purposes related to compliance with the terms of this Document including, but not limited to, discussion and clarification of reports and discussion of other matters encompassed within this Document which are of concern to either party.

(3) In the event that the Coordinator has reason to believe that a provision or provisions of this Document have been violated, the following procedure will be followed:

(a) The Coordinator will give written notice to the Company Administrator of the alleged violation together with a short statement of the factual basis underlying such claim.

(b) The Company Administrator shall, within 15 days after receipt of such notice, file a written response with the Coordinator.

(c) If the Coordinator, after consideration of the Company Administrator's response, still believes a violation may have occurred, he and the Company Administrator shall, by informal discussion, attempt to resolve the alleged violation.

(d) If informal discussion fails to resolve the alleged violation, the Coordi-

nator shall give the Company Administrator written notice that the Coordinator may apply to the District Court retaining jurisdiction for resolution of the alleged violation, not earlier than thirty (30) days from the date said notice is given.

C. All reports, personnel records, data, material or information required by or furnished to or examined by the Coordinator because of the terms of this Document are deemed to be confidential and, with the exception noted in C.(1) and (a) below, shall not be furnished to or examined by any other person. Moreover, in the event such other person secures access to any of the above described materials or information contained therein, he shall be and is hereby similarly prohibited from disclosing to, or discussing with other persons any such confidential material. All written material of any kind is to be returned to the Company within a reasonable time but no later than upon termination of this Document. In no event shall any of the above described materials be disclosed to or discussed with anyone except for the purpose of carrying out the terms of this Document.

(1) Counsel for Plaintiff shall, upon request to the Coordinator, with notice to the Company Administrator, have access to the reports, personnel records, data, material and information furnished to the Coordinator in accordance with paragraph C. above

and only for their use in connection with carrying out the terms of this Document. Counsel for plaintiff agrees that such materials are confidential, that they shall not be copied, furnished to, discussed with, examined by or otherwise disclosed to any other person except as provided herein in (a) below and further agrees to return all such material to the Company within a reasonable time but no later than upon termination of this Document.

(a) It is understood that counsel for plaintiff may find it necessary to disclose certain of this material to other persons consistent with the carrying out of the terms of this Document. In the event this does occur, counsel for plaintiff agrees that prior to such disclosure they will undertake full responsibility of informing such other person that he/she is prohibited from disclosing such information as set forth in section C. above, and counsel for plaintiff will secure such person's signed acknowledgment thereof.

D. All reasonable costs of administering this Program are to be borne by Western.

## III.  GOALS FOR FILLING VACANCIES

The specific goals set forth in paragraph A, B and C below are established for the filling of vacancies by women during the life of this Document:

A. Department Chief and Section Chief Vacancies:

   1. Department Chief: 1 woman for every 4 vacancies until 10% of department chiefs are women.

   2. Section Chief: 2 women for every 4 vacancies until 20% of section chiefs are women.

B. Other Ungraded Job Vacancies:

   1. Engineers: 1 woman for every 3 vacancies until 2% of engineers are women.

   2. Information systems professionals: 1 woman for every 3 vacancies until 21% of information systems employees are women.

   3. PAE and Wages Practices: 1 woman for every 3 vacancies until 29% of PAE and Wage Practices employees are women:

   4. Technicians, (engineer associates and information systems associates) 1 woman for every 3 vacancies until 22% of technicians are women.

Although goals cannot be adopted for the filling of vacancies in the different levels of jobs within the above listed (Article III, B.1 through 4) job categories, it is the Company's intent to encourage the upward mobility of women.

C. *Graded Job Vacancies*:

1. Direct Hire: The following schedule will be used in the filling of vacancies in entry level graded jobs where there is an opportunity and need for direct hire.

### Input Goal Schedule

| Where female utilization at entry level is: | 0–25% | 26–50% | 51–75% | 76–99% |
| --- | --- | --- | --- | --- |
| The multiplier shall be | 150% of Female Avail. | 133% of Female Avail. | 125% of Female Avail. | 110% of Female Avail. |

\* Female availability is defined as follows:

(a) Salaried:      74%
(b) Craftworker:    7%
(c) Operative:     44%
(d) Service:       32%
(e) Technician:    22%

2. Promotion: The promotion procedures set forth in Article IV C below will be used with respect to those vacancies in graded jobs to be filled by promotions seeking to achieve the following utilization:

(a) Salaried:      58.6% at each level
(b) Craftworker:    7.0% at each level
(c) Operative:     37.9% at each level
(d) Service:       19.3% at each level
(e) Technician:    22.0% at each level

## IV. PROMOTIONS

A. *Definition*: Promotion as used herein shall include all permanent upgrading; and shall include all rotation or lateral transfers which make upgrade possible, whether or not such rotation or transfer includes an increase in pay at the time of rotation or transfer.

(1) To the extent that the Company performs annual or periodic appraisals of employees, the criteria for such appraisals shall be job related and wherever practicable objective.

(2) In connection with promotions to section chief, the Company shall either abandon use of the management potential inventory (hereinafter "MPI") and any functional equivalent device or it shall develop specific standardized, written criteria for the selection of persons for inclusion on the MPI. If the Company maintains the MPI, or any successor functionally equivalent device, for use in connection with promotions to section chief, the criteria developed shall be job related and wherever practicable objective.

(3) The criteria relied upon for promotion shall be job related and wherever practicable objective.

(4) *Temporary Upgrades*: Employees who are temporarily assigned to higher-grade jobs on a full-time basis will be temporarily upgraded. The upgrading will be retroactive to the date of the assignment to the higher grade and limited to a maximum of three months. Approval of the Company Administrator is required.

The three-month maximum limitation on the duration of temporary upgrades may be extended in those particular situations involving disability cases or ADP absences which will last more than three months. The approval of the Company Administrator shall be required to extend the temporary upgrade for each additional three-month period not to exceed nine months in the aggregate.

Employees will receive temporary upgrades only if the primary intent in per-

forming the assignment is to keep the full job going to meet the needs of the business rather than an intent to develop, train, or broaden the experience of an individual. Temporary upgrades shall not be considered as qualifying experience for movement of personnel.

Qualified candidates shall be selected from the Department having the vacancy. If no qualified candidates are available, the Personnel organization shall be contacted for assistance in seeking qualified candidates.

The salary for the temporary upgrade shall be set at the higher grade's start rate or a standard upgrade amount above the replacement's present salary, whichever is greater. All temporary upgrades shall be periodically reported to the Coordinator.

B. *Notification Procedure for Promotional Vacancies*

The Company shall take the following steps to notify women employees of job vacancies.

(1) *Ungraded Jobs*

(a) Vacancies in ungraded jobs (except for "Plant Security Associate") shall be advertised, i. e., the job title, duties and prerequisite qualifications shall be described in writing, and the advertisement shall be placed on bulletin boards located in areas where they can be readily reviewed by employees. Any employee will be able to nominate herself ("self-nomination") for the advertised position. Interested employees shall be allowed seven (7) working days to apply for the ungraded job vacancy during the first six months from the effective date of this Document, and five (5) working days thereafter.

(b) The Company will announce, by bulletin board notice, the name and term of employment of the employee who is selected for each advertised position. The Company will not remove the notice for a period of five (5) working days after first posting the notice.

(2) *Graded Jobs*

(a) Vacancies in graded jobs (except for guards, utility and plant maintenance employees covered by the collective bargaining agreement between the Company and the Western Electric Plant Protection Union) shall be advertised, i. e., the job title, duties and prerequisite qualifications shall be described in writing and the advertisement shall be placed on bulletin boards located in areas where they can be readily reviewed by employees. Any employee will be able to nominate herself ("self-nomination") for the advertised position. Interested graded employees shall be allowed five (5) working days to apply for the graded job vacancy during the first six months from the effective date of this Document, and four (4) working days thereafter. Self-nominated graded employees shall have their names added to the placement list by grade in accordance with their Term of Employment.

(b) The Company will announce, by bulletin board notice, the name and term of employment of the employee who is selected for each advertised position. The Company will not remove the notice for a period of five (5) working days after first posting the notice.

(c) The Company will have the procedures for advertising, self-nomination and posting as well as all forms to be used in connection therewith developed and operational within three months from the effective date of this Document.

C. *Procedures for Promotions on Graded Jobs*

(1) *Feeder Classifications*: The Company will continue its practice of maintaining "feeder classifications" to be used in filling of graded job vacancies. The feeder classifications will generally be the next grade below in the established occupational feeders in which the vacancy occurs. The feeder classifications currently in use will be those employed, but the Company will review feeder classifications from time to time to insure that they are reasonably suited to facilitate movement of women to fill graded job vacancies.

(2) *Placement List*: The Company will generate a placement list which will contain the names of employees as identified in C.(1) and IV B.2(a) above in grade order and service date. Selection of employees to fill the vacancy will be made from the placement list in the following manner:

(a) Employees will be considered in the order in which they appear on the placement list until the requisite number of employees are selected to fill the vacancy or vacancies.

(b) Qualifications shall be determined by the Company based on employee experience, demonstrated productive efficiency, skills and abilities for the upgrade to the position in which the vacancy exists and conduct. Only job related qualifications and term of employment will be considered. Nothing herein shall restrict the Company from selecting the best qualified employee on the placement list to fill a vacancy.

(c) If a woman who is consulted concerning her interest in filling a graded job vacancy declines to be considered for the vacancy or expresses a lack of interest in the vacancy, her lack of interest will be documented in writing and shown to the woman who will be required to sign the written document to insure the accuracy of the statement thereon.

(d) If a junior male is selected over a senior woman who is considered for a vacant position, the Company will, upon request, state in writing the reasons for the selection, particularly stating the basis for its contention that she is not qualified or that the candidate selected is better qualified for the vacancy.

D. *Procedures for Promotion on Certain Ungraded Jobs*

(1) *Professional Engineers, Professional Information Systems, Engineering Associates and Information Systems Associates*

(a) When applicable, reclassification (promotion) of women in the professional engineering and information systems classifications shall continue to be through action of the appropriate Company reclassification committee. Upon meeting the applicable eligibility requirements for consideration for reclassification (promotion), women in these job groupings will be informed of their right to request consideration for promotion. They will be advised in advance when their reclassification is to be considered by the committee. Any woman rejected for promotion will, upon request, be advised in writing, of the reasons for her rejection.

(b) Entry into the professional engineering and information systems classifications from the associate, or other classifications, is also approved by the same committee as provided for in (a) above.

(c) Women may nominate themselves, in accordance with the procedures set forth in IV B.(1), for promotion to the position of engineering associate or information systems associate. Their candidacies will be reviewed along with those of all persons recommended for promotion to these positions; the Engineering Associate Pool Committee will review candidates for engineering associates and candidates for information systems associates will be reviewed by the manager in charge of the organization who is a member of the Engineering Associate Pool Committee. Any woman rejected for promotion will, upon request, be advised, in writing, of the reasons for her rejection. Any woman who refuses a promotion will be required to sign a memorandum acknowledging her refusal.

(2) *Department Chief, Section Chief, PAE and Wage Practices*

(a) Promotion to Department Chief or Section Chief and promotion into and within PAE and Wage Practices classifications will be reviewed and approved by the appropriate selection committee consisting of Assistant Managers representing the various organizations.

(b) Nominations by supervisors shall be by written recommendation to the Department Chief, Personnel indicating the specific skills and knowledge related to the open position the candidate has demonstrated on

current or previous jobs or though outside experience or education.

(c) Women may nominate themselves, in accordance with the procedures set forth in IV B.(1), accompanied by their statement of how they meet the entry qualifications of the job in a manner similar to that used for supervisor nominations. The Department Chief, Personnel will then solicit from one or more supervisors a current written appraisal and a job history of the candidate.

(d) Following the expiration of the job advertisement period, the Personnel Organization will compile a folder including for each candidate a job history resume, a Kearny Works recommendation form and a self-nomination form (self-nominees) for selection committee use.

Each member of the selection committee shall independently review each candidate's folder to rate candidates in terms of their qualifications to meet the job requirements. The committee members shall then meet, review write-ups, and discuss differences in rating of candidates. Supervisors may be requested to present additional information or documentation, when needed, that would facilitate the rating of candidates on qualifications for the position in question.

(e) Any woman who nominates herself and is not selected for promotion will, upon request, be advised, in writing of the reasons for her non-selection. Any woman who refuses a promotion will be required to sign a memorandum acknowledging her refusal.

### E. *Employee Files and Recommendations*

(1) Employees shall be informed of Company file systems containing personal data. Information regarding an employee's performance and qualifications which do not require professional interpretation, which is not part of investigatory proceeding, or which is not part of future Company planning data, shall be made available to the employees for examination. This includes information on periodic ratings, disciplinary action, attendance or productivity. The Company shall adopt procedures to imple-

ment the provisions of this section IV E.(1). Such procedures shall be made known to all employees.

(2) To the extent that the Company relies upon recommendations of supervisors in selecting persons for jobs, such recommendations shall be in writing and shall be in accordance with written guidelines developed for that purpose. These guidelines shall include the requirements that such recommendations must be in writing, and available to the employee for inspection.

## V. HIRING

### A. *Procedures*

(1) For each job the Company Administrator shall determine the actual minimum entry level qualifications required. No woman shall be determined to be unqualified for a job opening if she shall meet those minimum requirements, provided, however, that the Company shall not be required to hire a woman solely because she has met such minimum qualifications.

(2) Written guidelines and instructions shall be developed and used for evaluating and selecting new hires. These shall include job related and wherever practicable objective criteria for each job classification.

If a man is hired for a job opening in a job category in which women are underutilized, the person responsible for the selection shall prepare, in writing, a statement of the reasons for the selection.

(3) All persons assigned to the hiring function shall be given training by the Company in the law applicable to sex discrimination in employment.

### B. *Retrieval File*

The Company shall maintain a system for retention of applications of women who although qualified for jobs in which women are underutilized are not hired. Applicant information will be kept for one year from date of application. When a need for outside candidates exists, the Company will refer to applicant information for potentially qualified women candidates.

### C. *Recruiting*

For positions (other than entry level graded occupations) utilizing outside hiring:

(a) No recruiting materials used by the Company shall use exclusively male pronouns. "He or she", "his or her" shall be used. All recruiting materials utilized by the Company which make use of pictures or drawings shall have pictures showing women in varieties and levels of jobs.

(b) In general, the Company shall recruit women for consideration for a job opening in a job category in which women are underutilized both through outside recruitment efforts and within the plant; provided however, that no recruitment obligation is imposed with respect to a job opening filled by reason of other provisions of this Document.

(c) Where agency fees are charged, the Company shall pay agency fees for women equal to the fees paid for men.

(d) The Company shall develop continuing contacts with employment agencies and executive search firms which specialize in recruiting women and shall notify these agencies of openings for hire.

(e) The Company shall respond in writing to written suggestions, which it will solicit from women employees, concerning methods and techniques to increase the percentage of women hired into jobs in which women are underutilized.

(f) All recruiting staff shall be trained in effective recruitment techniques for recruiting women for non-traditional jobs. Qualifications of recruiters, their training and performance shall be reviewed by the Company Administrator within 60 days of initial placement.

### VI. APPEAL PROCEDURE

If a woman believes that she has been denied an opportunity under the terms of this Document because of her sex, she may protest the denial in the following manner:

(1) She may fill out a form of protest to be designed and made available for that purpose by the Company Administrator on which she will specify the opportunity under this Document which she contends she was denied because of her sex and the reasons for her contention. This form shall be submitted to the Company Administrator within ten (10) working days of the time when she knew or should have known of the alleged denial of the opportunity.

(2) The Company Administrator, no later than thirty (30) days of the receipt of the completed claim form, will advise the woman of the disposition of the claim.

(3) If a claimant is dissatisfied with the determination of the Company Administrator, the claimant may, within ten (10) working days of receipt of notice of the Company Administrator's disposition of the claim, request in writing that her claim be referred to the Coordinator. If, after referral, the Coordinator disagrees with the disposition of the Company Administrator, the Coordinator and Company Administrator will undertake to resolve the disagreement by informal discussion of the matter. If informal discussion fails to resolve the disagreement, the Coordinator shall give the Company Administrator written notice that the Coordinator may apply to the District Court retaining jurisdiction for resolution of the disagreement not earlier than thirty (30) days from the date said notice is given.

### VII. STATUS OF CERTAIN JOBS

The Company Administrator shall investigate and identify whether or not there are jobs held by women as to which the opportunities for promotion are limited, and shall implement appropriate remedial measures.

### VIII. TRAINING

A. The Company will encourage women to take advantage of educational and training opportunities by regular announcements of the requirements for participation in such programs including tuition refund, in-house training, through job rotation or otherwise, and programs at the Corporate Education Center. Enrollment shall be reviewed semiannually, and if underrepresentation is found by the Company Administrator, he or she may adopt measures to achieve appropriate participation.

B. In accordance with procedures to be developed by the Company within three months of the date of this Document, if a woman accepts a job in a lower grade and at a lesser salary than the one currently held, such new job being one that would better facilitate promotional opportunities, the employee shall be entitled to retain the old rate of pay on the occasion of that transfer and she shall be so advised. Such rate retention shall be allowable for one (1) transfer only and shall terminate on the occurrence of any one of the following:

   (1) At the end of the training period set forth in the job specifications.

   (2) The employee refuses to accept a promotion or fails to take an opportunity for a permanent promotion to a higher job.

   (3) The employee twice fails to qualify for permanent promotion to the same next higher job in the employee's line of progression.

C. The Company shall provide counselling to women employees designed to assist them in evaluating their current status and their opportunity to qualify for promotion, for transfer or for training programs. Such counselling shall be provided on a regular basis for groups of women employees with additional individual counselling provided at reasonable times and places during normal working hours at the request of any woman. Such counselling will include advice as to training, education, or other skills required for achievement of promotion.

D. While it is expected that the training, counselling, and rate retention programs provided will enhance the qualifications of those who participate, the Company's support for these programs does not imply any commitment by the Company to advance any woman merely because she participates in or completes any such program.

## IX. TESTS

A. Tests used to assist in making a selection decision (including but not limited to hiring, job assignment, promotion, entrance into training) are to be restricted to those procedures authorized by the corporate Human Resources Research and Testing Organization of the Company.

If the Company has not met a goal for filling vacancies by women as set forth in Article III of this Document and if the Coordinator has reason to believe that the reason for not meeting that goal is that a test used to assist in making selection decisions has had an adverse impact on women, he or she shall give written notice to the Company Administrator specifying which test is alleged to have had such impact.

The Company Administrator shall investigate such claim and, within thirty (30) days, respond in writing to the Coordinator.

If, after informal discussion, the Company Administrator and Coordinator agree that the test has had an adverse impact on women and that such impact is not justified by business necessity and that the test has not been properly validated as defined in paragraph 3 below, the Company shall undertake to validate such test, under the following conditions:

(1) While such test is in the process of validation the Company may, during the validation process, continue to use such test.

(2) Test validation shall be the responsibility of the corporate Human Resources Research and Testing Organization.

(3) Test procedures shall be properly validated taking into consideration appropriate professional and governmental standards and guidelines as well as developing case law.

Any women who, after the date of this Document, requests an opportunity to do so, shall be permitted to take any test regardless of whether she had previously failed the test, provided that the test is currently in use and that at least 30 days shall have passed since she previously took the same test and provided further that the Company shall not be required to administer the same test to any employee more than three times in any calendar year.

Any disagreement between the Company Administrator and Coordinator with respect

to whether (a) a test has had an adverse impact on the job opportunities of women, or (b) a test is properly validated, shall be resolved in accordance with the procedures set forth in Article II B.3.(d).

## X. LAYOFFS WHERE SURPLUS IS DECLARED IN HOURLY GRADED OR 200 SERIES UNIVERSE

A. Layoffs will be effected only after surplus has been identified and declared. Surplus will be declared where the surplus exists.

B. No male identified as a surplus employee shall have the right to "bump" any woman with longer term of employment, except as provided in (D) below.

C. Temporary upgrades shall not be considered as qualifying experience in connection with effectuating employee "bumping" rights.

D. The Company shall retain the right to exempt from selection for LAYOFF certain employees when such exemptions are necessary to avoid unreasonable departmental depletions, and may exempt from selection as surplus, certain employees whose skill, training or experience is necessary for the efficient operations of the business. All exemptions from layoff shall be periodically reported to the Coordinator.

## XI. MISCELLANEOUS

A. Sex designations shall not be used in job titles nor on any official form used unless necessary for record keeping by federal or state law, regulation or applicable guidelines or by order of this Court or is necessary or advisable in connection with implementing or monitoring the terms of this Document or in connection with federal or state Court or federal or state agency decrees or conciliation agreements or for affirmative action compliance programs in general. References to marital status shall be eliminated from all records, except as such reference is permitted or required by law and reasonable business necessity.

B. The Company shall not destroy, conceal or alter any employment records or employment related information, whether it is in document form or stored on computer tape or disc, on key punch cards, or is tape recorded, or is recorded in any other manner, for the period of time covered by this Document.

C. All persons exercising any supervisory authority or involved in the hiring function shall be required to participate in training programs providing education in the requirements of equal employment opportunity. Supervisors and persons involved in the hiring function shall be evaluated as to their performance in areas of affirmative action.

D. Nothing in this Document shall require the hiring or promotion of any woman who is not the best qualified available candidate.

E. Nothing in this Document shall be interpreted or construed to limit the right of the Company to afford to men the same benefits, privileges and entitlements extended to women as provided herein.

## XII. REPORTING

The Company Administrator shall submit a report to the Court, Coordinator and plaintiff's counsel semi-annually for the next four (4) years, with detailed information on its progress in meeting its goals, and on the effectiveness of other practices instituted as a result of this Document.

Exhibit D

ORDER REGARDING RULE
23(e) NOTICE

This matter having been opened to the District Court upon the joint application of Vladeck, Elias, Vladeck & Engelhard, Attorneys for Plaintiff (Judith P. Vladeck, Esq., appearing), and Pitney, Hardin & Kipp (S. Joseph Fortunato, Esq., appearing), and Joe Ramirez, Esq. and Lawrence M. Joseph, Esq., Attorneys for Defendant Western Electric Company, Incorporated (hereinafter "Western Electric"), for approval of the notice to be distributed pursuant to Fed.R.Civ.P. 23(e) with respect to a proposed settlement in this matter; and the District Court having reviewed the submis-

sions of the parties and good cause having been shown;

IT IS on this 6th day of June, 1980;

ORDERED that the form of the proposed NOTICE for mailing and proposed NOTICE for publication appended hereto are approved by the District Court; and it is further

ORDERED that on or before June 18, 1980, the NOTICE for mailing shall be distributed by defendant Western Electric by mailing the same by certified mail, return receipt requested, to all women who were or are employed or applied for employment at Western Electric's Kearny Works at any time after June 9, 1971, including all women who filed timely Stage II proofs of claim with the Clerk of the District Court in response to the previous notices to the class (which includes those persons whose claims were filed late but who were found by the District Court to have shown good cause for the late filing) and as to whom Western Electric has in its possession a current mailing address; and it is further

ORDERED that the return receipts shall be addressed to the Clerk of the District Court, United States District Court, United States Post Office & Courthouse Building, Newark, New Jersey 07101, and shall be available during regular business hours for inspection and/or copying by counsel for the parties; and it is further

ORDERED that following the mailing by Western Electric, a certificate of mailing accompanied by a list of all persons to whom notice was mailed shall be filed with the Clerk of the District Court by Western Electric and served upon Special Master Thomas F. Campion and counsel for the plaintiff; and it is further

ORDERED that following the initial mailing of the NOTICE for mailing by Western Electric, the NOTICE for publication shall also be published on two separate dates in the same newspapers in which notice was previously published in this lawsuit; and it is further

ORDERED that copies of all written objections, statements or any other submissions received by the Clerk of the District Court from the recipients of either NOTICE shall be available during regular business hours for inspection and/or copying by counsel for the parties.

Exhibit E

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AND HEARING REGARDING THE PROPOSED SETTLEMENT

TO: ALL WOMEN WHO ARE OR WERE EMPLOYED,

OR APPLIED FOR EMPLOYMENT AT, WESTERN

ELECTRIC'S KEARNY WORKS (INCLUDING

THE CLARK SHOPS) AT ANY TIME SINCE

JUNE 9, 1971.

NOTICE TO ALL CLASS MEMBERS

*Purpose of this Notice*

The purpose of this notice is

(1) to advise you that there is a proposed settlement of this case, and to explain the terms of the settlement to you. The proposed settlement will be considered at a hearing before the District Court which you may attend if you wish, and

(2) to explain to you that you may object to the proposed settlement if you wish, but that you need do nothing further if you are satisfied with the proposed settlement.

A. *Description of the Litigation*

The complaint in this action alleged that Western Electric Company, Incorporated (hereinafter "Western Electric"), discriminated against women in employment at its Kearny Works in New Jersey (including the Clark Shops).

Plaintiff, Kyriazi, sought class action certification on June 11, 1975. By order dated July 16, 1975 the District Court granted her motion for class action status and certified this action as a class action on behalf of "all females who are now or at any time since June 9, 1971, have been employed by defendant Western Electric Company, at the

Kearny Works or who sought employment at the Kearny Works since that date."

The case was tried on the issues of class liability and relief (reserving for later decision the specific relief to be awarded individual class members) and Kyriazi's individual claims commencing July 7, 1977 and concluding in December of 1977. The District Court issued its Opinion as to Western Electric's liability to Kyriazi and the class on October 30, 1978. The District Court found that Western Electric had unlawfully discriminated against women applicants and employees at the Kearny Works. The District Court also awarded Kyriazi back pay plus interest and directed Western Electric to reinstate her to employment at Western Electric.

After considering the parties' proposals, the District Court adopted a procedure for the determination of the appropriate remedy for members of the class ("Stage II"). Pursuant to that procedure, the District Court directed Western Electric to notify all class members by mail and/or publication in six local newspapers of their eligibility for relief. In that notice, class members were advised that they could be entitled to certain benefits, including monetary payments. The notice also advised any class member who wanted to be considered for an award of such monetary benefits that she must file a Proof of Claim form with the Clerk of the District Court by the date, or within the time, set forth in the notice.

Hearings began in April, 1979, for the over 2000 women who filed claim forms. The District Court appointed four Special Masters to hear the cases. The Special Masters were instructed to conduct proceedings, on a case-by-case basis to determine which of the class members were entitled to receive monetary and other relief. The Special Masters were directed to submit to the District Court recommendations for relief, if any, in each case. As of this date, more than 18 months after the commencement of Stage II, hearings have been completed in approximately 172 cases. It is estimated that Stage II could probably not be completed for at least five more years.

Both plaintiff and Western Electric presently have pending various appeals on various aspects of the above-described matters.

### B. Terms of the Settlement

The settlement which has been proposed by counsel for the plaintiff class and counsel for Western Electric provides (1) that Western Electric will implement a special Affirmative Action Program (hereinafter "Special Program") at the Kearny Works regarding the employment of women; (2) that Western Electric will establish a settlement fund from which money awards will be made to certain of those class members who filed claim forms; and (3) that class members who filed claim forms and who either (a) were never hired by Western Electric, or (b) who were laid off by Western Electric and never rehired or offered reemployment at the Kearny Works, will be given priority consideration for hiring.

### 1) Special Affirmative Action Program

The Special Program is designed to provide employment opportunities for women at the Kearny Works. The Special Program is effective for a period of four (4) years from the date of the final settlement of this suit and its provisions will be coordinated by two individuals (who are not employees of Western Electric) appointed by the District Court for that purpose. In summary, the basic terms of the Special Program are:

*Goals*

Specific goals are established for increasing the numbers of women filling ungraded job vacancies in the following job categories: Department Chief, Section Chief, Engineer, Information Systems Professionals, PAE and Wage Practices, and certain Technicians.

Goals are also established for hiring into graded job vacancies. Certain class members will be accorded priority consideration for hiring. Graded promotion procedures will seek to achieve a representative utilization of women at each grade level.

*Job Posting*

Western Electric will post notices of all graded and ungraded job vacancies covered

by this agreement to permit employees the opportunity to apply for job openings. Employees may nominate themselves for those vacancies. Western Electric will post the name and term of employment of the employee who is selected for each advertised position. In a graded job, if a junior man is selected over a senior woman, Western Electric will, if requested to do so, state in writing the reasons for selection. In an ungraded job, women who are not selected for promotion, upon request, will be advised in writing of the reasons for non-selection.

*Employee Files*

Western Electric will inform employees of its file systems containing personal data, and shall make information on an employee's periodic ratings, disciplinary action, attendance or productivity available to the employee for examination.

*Training and Career Counselling*

Western Electric will encourage women to take advantage of educational and training opportunities by regularly announcing requirements for participation in training courses. Western Electric will provide career counselling to women to help them evaluate their status and their opportunities for promotion, transfer, or training.

*Layoffs*

Lay-off will be effectuated only after surplus has been identified and declared. No man identified as a surplus employee will be able to "bump" a woman with a longer term of employment. Provision has been made for exemption of persons from selection as surplus in the Special Program. All exemptions from a lay-off shall be periodically reported to a Coordinator of the Special Program.

*Appeal Procedure*

Any woman who believes she has been denied an opportunity under the Special Program can file a protest under an appeal procedure. To do so she must fill out a form provided by Western Electric. Her complaint will first be considered by the Company Administrator of the Special Program who has the duty to fully investigate the complaint. If the woman is dissatisfied with the resolution of her complaint, she may request that her complaint be referred to a neutral person, called the Coordinator of the Special Program, who will then try to resolve it. If he or she is unable to do so, the Coordinator of the Special Program may apply to the District Court for a resolution.

2) *Settlement Payments*

The settlement fund will be established by the payment of the gross sum of seven million dollars ($7,000,000) into the Fund by Western Electric. All money awards to class members who filed claim forms will be made from the settlement fund under the direction of the District Court and an administrator of the fund (who is not employed by Western Electric) appointed by the District Court. The named plaintiff, Kyriazi, will also receive the money awarded to her by the District Court ($74,933.32) plus interest from the settlement fund. The payments to class members will be made in full satisfaction of any and all injuries or damages sustained by any member of the class as a result of sex discrimination in employment at Western Electric's Kearny Works. The fund monies will be placed in an interest bearing account(s) pending distribution and such interest will first be used for the payment of all administration fees and expenses incurred in connection with determination and distribution of each class member's share of the settlement fund, as well as any attorneys' fees or costs of counsel for the plaintiff in connection with that administration, before any money is paid for those expenses from the settlement fund. These administration fees and expenses will not be the responsibility of Western Electric.

The method of allocation and distribution of the money in the settlement fund is to be determined by the District Court. Although the precise amount which will be received by each individual class member cannot presently be exactly calculated, the amount of your settlement payment will be determined later by the District Court.

NOTE TO CERTAIN APPLICANT CLASS MEMBERS: Many class members

who applied for employment at the Kearny Works, but who were never hired, have already received a decision on their claim after having participated in hearings before Special Masters appointed by the District Court. These Applicant class members will receive payment from the settlement fund only of the amount, if any, which they have been awarded by the Special Master as confirmed by the District Court. No person will receive any payment from the settlement fund as an Applicant if prior to June 6, 1980 her claim for monetary relief had been denied by the Special Master as confirmed by the District Court, or if her claim was dismissed by a Special Master because of her failure to prosecute her claim.

3) *Priority Consideration for Hiring*

Class members who filed timely Stage II proofs of claim and who are either (a) Applicants (other than those Applicants found not to be entitled to priority hiring by the District Court or, subsequent to the date of the Order Regarding Tentative Approval of Settlement, by the Special Masters) or (b) who were laid off by Western Electric and not rehired or, since their layoff, have not been offered reemployment at the Kearny Works, will be granted priority consideration for hiring if qualified for a job opening in accordance with Western Electric's then current employment practices. In addition, any such claimant class member who was previously laid off and who has been rehired or may be rehired as a result of this priority consideration will, upon rehire, be given credit in her term of employment for previous credited service as of the date she was last laid off by Western Electric (but shall not be given credit in term of employment from the time of that layoff to the date of rehire).

NOTE TO CERTAIN APPLICANT CLASS MEMBERS: No Applicant will receive any priority consideration for hiring if she was found not to be entitled to priority hiring by the Special Master as confirmed by the District Court, or if her claim was dismissed by a Special Master because of her failure to prosecute her claim.

C. *Attorneys' Fees and Expenses*

Vladeck, Elias, Vladeck & Engelhard, the attorneys for the plaintiff, has sought, under the law, to have Western Electric pay their attorneys' fees and expenses incurred in this case. The attorneys' fees and expenses awarded by the District Court through October 30, 1979, are $1,052,797.25. The amount of attorneys' fees awarded is currently the subject of appeals filed by both counsel for the plaintiff and Western Electric. In addition, Vladeck, Elias, Vladeck & Engelhard intends to apply for additional attorneys' fees and expenses incurred from November 1, 1979 through final approval of settlement. Payment of any of these attorneys' fees and expenses will not be made from the settlement fund.

D. *Termination of the Litigation*

If the proposed settlement is approved by the District Court, it shall be in full satisfaction of any and all claims (monetary and for other relief) which were raised or which could have been raised by class members for any relief due to sex discrimination in employment at Western Electric's Kearny Works and such claims may not be pursued in any separate or new proceeding or lawsuit.

E. *Inspection of Settlement Documents*

If you wish to obtain more detailed information about the proposed settlement, a copy of a Stipulation of Settlement, the Affirmative Action Program and a proposed form of the final Order of Settlement are available for inspection during regular business hours at the Office of the Clerk, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey 07101.

F. *The Settlement Hearing and the Procedure For Objecting To The Settlement*

If you have no objection to the proposed settlement, you do not have to take any action in response to this Notice.

If you do wish to object to the proposed settlement, you must file your objections in writing (together with copies of any and all other papers you may wish to present rela-

tive to the settlement) by mailing or delivering them to the Clerk of the District Court, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey 07101. All such objections must be postmarked or filed not later than July 14, 1980. Any class member who files a timely objection in the manner described above may also appear and will be afforded an opportunity to be heard, either in person or through an attorney of her choice, at the settlement hearing which is scheduled to be held at 10:00 a.m. on July 24, 1980, before the Honorable Herbert J. Stern in Courtroom No. 1, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey 07101.

If you fail to object pursuant to the procedure described above, you will be presumed to agree with the proposed settlement and you will be forever barred from bringing any further claim against Western Electric relating to employment discrimination based on sex at the Kearny Works.

G. *Consultation With Attorneys*

In addition to your right to retain and consult with your own attorney regarding this proposed settlement, you also have the right to consult with the attorney for the plaintiff in this lawsuit. Her name, address and telephone number are: Judith P. Vladeck, Esq., Vladeck, Elias, Vladeck & Engelhard, 1501 Broadway, New York, New York 10036. Telephone number: (212) 354-8330.

Exhibit E–1

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AND HEARING REGARDING THE PROPOSED SETTLEMENT

TO: ALL WOMEN WHO ARE OR WERE EMPLOYED,

OR APPLIED FOR EMPLOYMENT AT,

WESTERN ELECTRIC'S KEARNY WORKS

(INCLUDING THE CLARK SHOPS) AT ANY

TIME SINCE JUNE 9, 1971.

NOTICE TO ALL CLASS MEMBERS

Pursuant to notice previously given you, you were advised of the pendency of the above captioned lawsuit brought by Kyriaki Cleo Kyriazi, a former employee of Western Electric, of the holding of the District Court Judge that Western Electric had unlawfully discriminated against women at the Kearny Works (including the Clark Shops), and of the requirement that you fill out and file a form with respect to your claim if you wished to be considered in proceedings (titled Stage II) for damages and other relief against Western Electric.

The purpose of this notice is to advise you that there is a proposed settlement of this lawsuit. The settlement provides for an affirmative action program; and *for certain of those class members who filed claim forms*, monetary relief and priority consideration for hiring relief. Those who filed claim forms will be receiving notice by mail.

A complete description of the proposed settlement, a copy of a Stipulation of Settlement, the Affirmative Action Program, a proposed form of the final Order of Settlement and a description of who will receive priority consideration for hiring are available for inspection during regular business hours at the Office of the Clerk, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey 07101.

If you have no objection to the proposed settlement, you do not have to take any action in response to this notice.

If you do wish to object to the proposed settlement, you must file your objections IN WRITING (together with copies of any and all other papers you may wish to present relative to the settlement) by mailing or delivering them to the Clerk of the District Court, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey 07101. All such objections must be received by the Clerk of the District Court not later than July 14, 1980. Any class member who files a timely objection in the manner described

above may also appear and will be afforded an opportunity to be heard, either in person or through an attorney of her choice, at the settlement hearing which is scheduled to be held at 10:00 a.m. on July 24, 1980, before the Honorable Herbert J. Stern in Courtroom No. 1, United States District Court, United States Post Office and Courthouse Building, Newark, New Jersey 07101.

If you fail to object pursuant to the procedure described above, you will be presumed to agree with the proposed settlement and you will be forever barred from bringing any further claim against Western Electric relating to employment discrimination based on sex at the Kearny Works.

If the proposed settlement is approved by the District Court, it shall be in full satisfaction of any and all claims (monetary and for other relief) which were raised or which could have been raised by class members for any relief due to sex discrimination in employment at Western Electric's Kearny Works and such claims may not be pursued in any separate or new proceeding or lawsuit.

You may consult with your own attorney regarding this proposed settlement and you also have the right to consult with the attorney for the plaintiff in this lawsuit: Judith P. Vladeck, Esq., Vladeck, Elias, Vladeck & Engelhard, 1501 Broadway, New York, New York 10036. Telephone number: (212) 354-8330.

### APPENDIX C

### FINAL ORDER OF SETTLEMENT

This matter having been opened to the District Court upon the joint application of Vladeck, Elias, Vladeck & Engelhard, Attorneys for Plaintiff (Judith P. Vladeck, Esq., appearing), and Pitney, Hardin & Kipp (S. Joseph Fortunato, Esq., appearing), and Joe Ramirez, Esq. and Lawrence M. Joseph, Esq., Attorneys for Defendant Western Electric Company, Incorporated (hereinafter "Western Electric"), for final approval of the settlement of all class claims and the individual claim of plaintiff against defendant Western Electric; and

notice having been directed to members of the class of the terms of the proposed settlement; and the District Court having conducted a hearing on July 24, 1980 for the purpose of hearing any objections by class members to the proposed settlement; and the District Court having found by Order dated October 1, 1980, that the proposed settlement is fair, adequate and reasonable; and good cause having been shown;

IT IS on this 1 day of October, 1980;

ORDERED that the proposed settlement of this matter, as set forth more fully in the Stipulation of Settlement executed by the parties on June 6, 1980, as previously or hereinafter revised, encompassing the class as certified on July 16, 1975 of all females who were then or who at any time since June 9, 1971, have been employed by Western Electric or sought employment with Western Electric at the Kearny Works, is hereby granted final approval pursuant to the provisions of Rule 23(e) of the Federal Rules of Civil Procedure; and it is further

ORDERED that upon execution of this Final Order of Settlement, the rights of the class members shall be only as contained herein. Consistent therewith, the above described settlement is deemed to be in full satisfaction of any and all claims, monetary or otherwise including, but not limited to, all claims for damages, back pay, benefits, injunctive, declaratory or other relief, which were raised or could have been raised against Western Electric based on sex discrimination in employment at the Kearny Works and arising under Title VII of the Civil Rights Act of 1964 or any other local, state or other federal equal employment opportunity law, executive order or regulation, which plaintiff or any member of the class had or has from July 2, 1965 through July 24, 1980; and such settlement supersedes all prior findings of liability and orders for relief and shall also operate as an accord and satisfaction of all outstanding judgments or orders in this matter; and it is further

ORDERED that Western Electric will not harass or retaliate against any person on account of her participation in this litigation; and it is further

ORDERED that neither the execution of this Order, nor any other agreement or order in this proceeding, nor any factual finding or legal conclusion rendered by the District Court in any phase of this lawsuit, shall be construed to be, or shall be admissible in any proceeding as evidence of, or an admission by Western Electric, of any violation of Title VII of the Civil Rights Act of 1964 or any local, state or other federal equal employment opportunity law, executive order or regulation; and it is further

ORDERED that no payments shall be made to class members from the Settlement Fund, until the expiration of the time for appeal or the exhaustion of any appeals; and it is further

ORDERED that if for any reason this Order or any other Order approving the proposed settlement and/or overruling objections to the proposed settlement is vacated or reversed on appeal, then this Order and all previous settlement stipulations, orders and proceedings shall be null and void and all monies contained in the Settlement Fund and all interest accrued thereon, less any expenses for administration of the Settlement Fund, shall be returned to Western Electric within thirty (30) days of the vacation or reversal of any such Order on appeal; and it is further

ORDERED that the District Court shall retain jurisdiction over this action for a period of four (4) years from the date of the commencement of the implementation of the substantive terms of the proposed settlement, at which time all duties and obligations of Western Electric which may remain outstanding shall be deemed satisfied and discharged; and it is further

ORDERED that the effectuation of the substantive terms of the proposed settlement be and the same is hereby stayed until such further order of the Court as may be appropriate upon the resolution of the appeals, if any, regarding the proposed settlement; and it is further

ORDERED that this Order shall supersede the Order contemplated by Exhibit B to Stipulation of Settlement; and it is further

ORDERED that this Court expressly determines that there is no just reason for delay in the entry of Final Order of Settlement herein within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure; and it is further

ORDERED that this Final Order of Settlement be and it hereby is expressly entered as a Final Judgment.

## APPENDIX D

### ORDER REGARDING FISCAL ADMINISTRATOR'S DUTIES, POWERS and FUNCTIONS

This Court has this date entered an Order Regarding Tentative Approval of Stipulation of Settlement. This Order is entered to appoint the Fiscal Administrator and to set forth his duties, powers and functions.

IT IS on this 6th day of June, 1980;

ORDERED that Thomas F. Campion, who has been serving as a Special Master in this action pursuant to an earlier Order of this Court, be and he hereby is appointed as the Fiscal Administrator described in this Court's Order Regarding Tentative Approval of Stipulation of Settlement and in the Stipulation of Settlement and exhibits attached thereto; and

IT IS FURTHER ORDERED that the defendant Western Electric Company Incorporated shall pay to the Fiscal Administrator the total settlement amount of Seven Million Dollars ($7,000,000.00) against receipt therefor, a copy of which receipt shall be filed with the Court. The Fiscal Administrator shall thereafter hold and administer the settlement amount as follows:

A. The Fiscal Administrator shall deposit the settlement amount into interest bearing accounts in not less than four (4) commercial and/or savings banks having their principal places of business in the State of New Jersey, each having a combined capital and surplus of not less than $25,000,000.00. Not more than $2,500,000.00 shall be deposited into any one Bank. The Fiscal Administrator shall also establish at least one checking account with a commercial bank

having its principal place of business in the State of New Jersey, having a combined capital and surplus of not less than $25,000,000.00. All accounts established and maintained by the Fiscal Administrator shall be designated "Thomas F. Campion, Fiscal Administrator, U.S.D.C.N.J. Docket No. 475–73."

B. The Fiscal Administrator may, in his sole and absolute discretion, purchase or acquire (1) certificates of deposit and/or Bankers' acceptances of commercial and/or savings banks having their principal places of business in the State of New Jersey, each having a combined capital and surplus of not less than $25,000,000.00; (2) Obligations of the United States Government or any agency thereof and obligations guaranteed by the United States Government and/or (3) Repurchase Agreements with commercial and/or savings banks having their principal places of business in the State of New Jersey, each having a combined capital and surplus of not less than $25,000,000.00, provided such Repurchase Agreements are secured by obligations of the United States Government or any Agency thereof.

C. The Fiscal Administrator shall, pursuant to applicable Orders of this Court, pay over to members of the Plaintiff class the amount designated as their share of the settlement amount.

D. The Fiscal Administrator shall pay over the administration fees and expenses described in paragraph 2 of the Stipulation of Settlement from the interest earned on the settlement amount in such amounts as the Court may determine upon application of the Special Masters and Plaintiffs' counsel supported by appropriate Affidavits of Services. Any surplus interest remaining in the hands of the Fiscal Administrator after payment of these fees and expenses shall be paid over to the members of the Plaintiff class in such a manner as this Court directs.

E. Any and all payments out of the settlement amount to members of the Plaintiff class and any and all payments out of the interest thereon for the aforesaid fees and expenses shall be made only upon the joint signatures of this Court and the Fiscal Administrator.

F. The Fiscal Administrator shall file with the Court and serve upon Vladeck, Elias, Vladeck & Engelhard, P.C., attorneys for the Plaintiffs' class representative, an Account of his administration of the settlement amount upon final distribution thereof which Account shall become final and binding upon Plaintiffs within thirty (30) days absent written exception thereto filed with the Court and served upon the Fiscal Administrator within that thirty (30) day period. Vladeck, Elias, Vladeck & Engelhard, P.C. shall cause copies of the Account to be made available to any member of the Plaintiff class upon written request.

G. The Fiscal Administrator shall, within three (3) days from the date of receipt of the settlement amount, file with the Clerk of the Court a Surety Bond in the amount of $7,000,000.00 to secure the performance of his duties hereunder. The Fiscal Administrator shall be reimbursed the costs of premiums for said Bond out of the interest earned on the settlement amount.

H. Subject to compliance with the terms hereof and any subsequent Orders of this Court, the Fiscal Administrator shall be free from any and all liability in connection with the administration of the settlement amount or any interest earned thereon, except for any loss arising out of gross negligence and/or willful misconduct.

## APPENDIX E

### *The Kyriazi Matter*
### FORM 906

### CLOSING AGREEMENT ON FINAL DETERMINATION COVERING SPECIFIC MATTERS

Under Section 7121 of the Internal Revenue Code Thomas F. Campion, Fiscal Administrator (hereinafter "Fiscal Administrator"), in care of Shanley & Fisher, 550 Broad Street, Newark, New Jersey 07102, ID # 22–2305270, and Western Electric Company, Incorporated (hereinafter "Western Electric"), 222 Broadway, New York,

New York, 10038, ID # 13–5481490, and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS ON April 30, 1973 a lawsuit was filed in the United States District Court for the District of New Jersey, Civil Action No. 475–73 (The Honorable Herbert J. Stern), by plaintiff Kyriaki Cleo Kyriazi (hereinafter "plaintiff") against Western Electric alleging individually and on behalf of all persons similarly situated discrimination on the basis of sex at Western Electric's Kearny Works in New Jersey (including the Clark Shops and hereinafter collectively referred to as the "Kearny Works") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; and

WHEREAS by Order dated July 16, 1975 the District Court certified the lawsuit pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure as a class action encompassing all females who were then or who at any time since June 9, 1971 have been employed by Western Electric or sought employment with Western Electric at the Kearny Works; and

WHEREAS by Order dated October 1, 1980 the District Court gave final approval to the settlement of the aforesaid action which settlement encompasses the class of all females who were then or who at any time since June 9, 1971 have been employed by Western Electric or sought employment with Western Electric at the Kearny Works and further ordered that the settlement is in full satisfaction of any and all claims, monetary or otherwise including, but not limited to, all claims for damages, back pay, benefits, injunctive, declaratory or other relief, which were raised or could have been raised against Western Electric based on sex discrimination in employment at the Kearny Works and arising under Title VII of the Civil Rights Act of 1964 or any other local, state or other federal equal employment opportunity law, executive order or regulation, which plaintiff or any member of the class had or has from July 2, 1965 through July 24, 1980; and

WHEREAS, pursuant to Order of the District Court, Western Electric has paid the gross sum of seven million dollars ($7,000,-000) (hereinafter referred to as the "Settlement Fund") to the Fiscal Administrator who was appointed by the District Court and is responsible, in conjunction with the District Court, for the placement of the Settlement Fund monies in an interest bearing account(s) and for the subsequent allocation and distribution of the Settlement Fund; and

WHEREAS, pursuant to the Order of the District Court the Settlement Fund will be distributed by the Fiscal Administrator to and allocated among the eligible class members i. e. those who had filed timely Stage II proofs of claim with the Clerk of the District Court in response to the previous notices to the class (including those persons whose claims were filed late but who were found by the District Court to have shown good cause for late filing) and further including those persons who are determined to be eligible to participate in the distribution of the Settlement Fund in hearings conducted pursuant to the Order of the District Court dated October 1, 1980 or are otherwise determined to be eligible to participate in the distribution of the Settlement Fund; and

WHEREAS, it is contemplated that payments to the eligible class members will be made by the Fiscal Administrator either in one taxable year or in two taxable years; and

WHEREAS, the Fiscal Administrator and Western Electric recognize that there are employment tax consequences arising out of the payment of the Settlement Fund to the eligible class members and each taxpayer desires to enter into this Closing Agreement with the Commissioner of Internal Revenue to set forth the employment tax consequences of such payments and the liability and responsibility of each taxpayer;

NOW IT IS HEREBY DETERMINED AND AGREED for Federal Income Tax, Federal Insurance Contribution Act, and Federal Unemployment Tax Act purposes as follows:

A. With respect to the eligible class members who are or were employees of Western Electric (hereinafter collectively referred to as "employee" or "employees" unless the context otherwise requires):

1. The payments made out of the Settlement Fund by the Fiscal Administrator to the employees are wages in the year of payment for purposes of the taxes imposed by the Federal Insurance Contribution Act (hereinafter "FICA"), the Federal Unemployment Tax Act (hereinafter "FUTA") and for Federal Income Tax withholding purposes.

2.(a) The Fiscal Administrator is required to withhold Federal Income Taxes from the payments made to each employee.

(b) The Fiscal Administrator shall determine the tax to be withheld from the payments to be made to the employees by using a flat rate of 20% of the payments without regard for withholding allowances and without reference to a regular wage payment.

(c) The Fiscal Administrator is required to make a deposit of the withheld taxes in a Federal Reserve Bank or other authorized depositary within 3 business days after making the payments to the employees and shall obtain a depositary receipt for such deposit.

(d) The Fiscal Administrator shall not be required to secure Forms W–4 "Employer's Withholding Allowance Certificate" from the employees.

(e) Western Electric shall not be required to secure Forms W–4 "Employer's Withholding Allowance Certificate" from its former employees.

(f) Western Electric is not responsible for the withholding of Federal Income Taxes from the payments made to the employees.

3.(a)(1) The Fiscal Administrator is required to withhold taxes imposed by § 3101 of the Internal Revenue Code of 1954, as amended (hereinafter the "Code") (employee's share of FICA) from the payments, and shall deposit said FICA taxes in a Federal Reserve Bank or other authorized depositary within 3 business days after making the payments to the employees and shall obtain a depositary receipt for such deposit.

(a)(2) Western Electric is responsible for the employer's share of FICA taxes imposed on the payments under § 3111 of the Code, and shall deposit said FICA taxes in a Federal Reserve Bank or other authorized depositary within 3 business days after the payments are made to the employees.

(a)(3) The FICA tax rate and the maximum earnings subject to FICA shall be based on the law in effect for the year in which the payment is made.

(b)(1) Western Electric is responsible for the FUTA taxes imposed on employers under § 3301 of the Code with respect to the payments, and shall deposit said taxes in a Federal Reserve Bank or other authorized depositary on or before the last day of the first calendar month following the close of the calendar quarter in which the payments are made to the employees.

(b)(2) The FUTA tax rate and the maximum earnings subject to FUTA shall be based on the law in effect for the year in which the payment is made.

(c) The Fiscal Administrator is not responsible for the employer's share of FICA taxes imposed on the payments under § 3111 of the Code.

(d) The Fiscal Administrator is not responsible for the FUTA taxes imposed on employers under § 3301 of the Code with respect to the payments.

(e) Western Electric is not responsible for the employee's share of FICA taxes imposed on the payments under § 3101 of the Code.

4.(a) Western Electric shall be required to include the amounts paid by the Fiscal Administrator as wages, and all withholdings with respect thereto, on Forms W–2 that it shall issue to the employees.

(b) The Fiscal Administrator shall not be required to issue Forms W–2 to the employees.

5.(a) The Fiscal Administrator shall be required to include the amounts paid by him on Internal Revenue Service (herein-

after "IRS") Form 941 that he shall file with the IRS.

(b) Western Electric shall be required to include the amounts paid by it on IRS Forms 940 and 941 that it shall file with the IRS.

(c) IRS Form 941 filed by the Fiscal Administrator and IRS Forms 940 and 941 filed by Western Electric shall contain a footnote indicating that the wages shown on the respective forms include amounts paid to the employees by Western Electric through Thomas F. Campion, Fiscal Administrator, pursuant to the Order of the District Court on which Mr. Campion withheld $_____ for income taxes and $_____ for the employees' share of FICA taxes, as evidenced by depositary receipts.

B. With respect to the eligible class members who sought employment with Western Electric but were never employed by Western Electric (hereinafter "applicants"):

1. The payments made out of the $7,000,000 Settlement Fund by the Fiscal Administrator to the applicants are wages in the year of payment for purposes of FICA taxes, FUTA taxes and for Federal income tax withholding purposes.

2.(a) The Fiscal Administrator is required to withhold Federal Income Taxes from the payments made to the applicants.

(b) The Fiscal Administrator shall determine the tax to be withheld from the payments to be made to the applicants by using a flat rate of 20% of the payments without regard for withholding allowances and without reference to a regular wage payment.

(c) The Fiscal Administrator is required to make a deposit of the withheld taxes in a Federal Reserve Bank or other authorized depositary within 3 business days after making payments to the applicants and shall obtain a depositary receipt for such deposit.

(d) The Fiscal Administrator shall not be required to secure Forms W–4 "Employer's Withholding Allowance Certificate" from the applicants.

(e) Western Electric shall not be required to secure Forms W–4 "Employer's Withholding Allowance Certificate" from the applicants.

(f) Western Electric is not responsible for the withholding of Federal Income Taxes from the payments made to the applicants.

3.(a)(1) The Fiscal Administrator is required to withhold taxes imposed by § 3101 of the Code (employee's share of FICA) from the payments, and shall deposit said FICA taxes in a Federal Reserve Bank or other authorized depositary within 3 business days after making the payments to the applicants and shall obtain a depositary receipt for such deposit.

(a)(2) Western Electric is responsible for the employer's share of FICA taxes imposed on the payments under § 3111 of the Code, and shall deposit said FICA taxes in a Federal Reserve Bank or other authorized depositary within 3 business days after the payments are made to the applicants.

(a)(3) The FICA tax rate and the maximum earnings subject to FICA shall be based on the law in effect for the year in which the payment is made.

(b)(1) Western Electric is responsible for the FUTA taxes imposed on employers under § 3301 of the Code with respect to said payments, and shall deposit said taxes in a Federal Reserve Bank or other authorized depositary on or before the last day of the first calendar month following the close of the calendar quarter in which the payments are made to the applicants.

(b)(2) The FUTA tax rate and the maximum earnings subject to FUTA shall be based on the law in effect for the year in which the payment is made.

(c) The Fiscal Administrator is not responsible for the employer's share of FICA taxes imposed on the payments under § 3111 of the Code.

(d) The Fiscal Administrator is not responsible for the FUTA taxes imposed on employers under § 3301 of the Code with respect to the payments.

(e) Western Electric is not responsible for the employee's share of FICA taxes imposed on the payments under § 3101 of the Code.

4.(a) Western Electric shall be required to include the amounts paid by the Fiscal Administrator as wages, and all withholdings with respect thereto, on Forms W–2 that it shall issue to the applicants.

(b) The Fiscal Administrator shall not be required to issue Forms W–2 to the applicants.

5.(a) The Fiscal Administrator shall be required to include the amounts paid by him on IRS Form 941 that he shall file with the IRS.

(b) Western Electric shall be required to include the amounts paid by it on IRS Forms 940 and 941 that it shall file with the IRS.

(c) IRS Form 941 filed by the Fiscal Administrator and IRS Forms 940 and 941 filed by Western Electric shall contain a footnote indicating that the wages shown on the respective forms include amounts paid to the employees by Western Electric through Thomas F. Campion, Fiscal Administrator, pursuant to Order of the District Court on which Mr. Campion withheld $_____ for income taxes and $_____ for the employees' share of FICA taxes, as evidenced by depositary receipts.

C. For the purpose of determining the maximum wages within a calendar year utilized in calculating the FICA, FUTA and any other applicable taxes, payments made by Western Electric and the Fiscal Administrator shall be deemed to be payments made by a single employer.

_____  2-26-81
/s/ THOMAS F. CAMPION      Date Signed
   FISCAL ADMINISTRATOR

WESTERN ELECTRIC COMPANY, INCORPORATED

By /s/ Lawrence M. Joseph      2/27/81
                                  Date Signed

Title Attorney

COMMISSIONER OF INTERNAL REVENUE

By Signature      3/6/81
                            Date Signed

Title DISTRICT DIRECTOR

## APPENDIX F

### ORDER RESPECTING DISTRIBUTION OF THE SETTLEMENT FUND

WHEREAS, the Fiscal Administrator has filed with this Court a Recommendation for Distribution of the Settlement Fund under date of February 13, 1981; and

WHEREAS, the Settlement Fund amounts to $7,000,000.00 on which interest has been accruing to date; and

WHEREAS, pursuant to the Stipulation of Settlement, the award of $103,506.75 plus interest is to be paid to plaintiff Kyriaki Cleo Kyriazi from the Settlement Fund; and

WHEREAS, pursuant to 108 Final Judgments entered by this Court on cases of 108 class members who were rejected applicants, those 108 rejected applicants are entitled to receive a total of $234,271.25 from the Settlement Fund; and

WHEREAS, there are approximately 60 eligible women who have rejected applicant claims only, but who have not had their claims presented to any of the Special Masters for a hearing or had their claims reduced to judgment; and

WHEREAS, the Court has reviewed the Recommendation for Distribution of the Settlement Fund filed by the Fiscal Administrator and has concluded that it is appropriate at this time to enter an Order respecting the distribution of the Settlement Fund, for good cause shown,

IT IS, on this ____ day of March, 1981, ORDERED

That the Settlement Fund (less the award to Kyriaki Cleo Kyriazi plus interest on the same and less the awards to the 108 class members who were rejected applicants) shall be divided among the eligible women (other than Kyriaki Cleo Kyriazi and the 108 aforementioned rejected applicants) in accordance with the number of credits each eligible woman is entitled to receive under the formula described in this Order. That formula will result in all of the eligible women (other than Kyriaki Cleo Kyriazi and the 108 aforementioned rejected applicants) earning a fixed number of credits.

Once the total of all the credits for those eligible women is fixed, that total should then be divided into the Settlement Fund (less the total payment made to Kyriaki Cleo Kyriazi and the 108 aforementioned rejected applicants).

Finally, the credits earned by each eligible woman shall be multiplied by the monetary value of each credit. This multiplication, after adjustments for women described in paragraph 7 *infra*, if any, will then result in a determination of the gross cash payment to which each eligible woman is entitled.

The formula shall be computed as follows:

1. *Employment Credits.*

Each eligible woman employed at Western Electric's Kearny Works (including the Clark Shops) at any time from June 9, 1971 until and including July 24, 1980 shall be entitled to one credit for each month of employment there during the actionable period. The "actionable period" shall run from June 9, 1971 until July 24, 1980. These credits shall be known as the employment credits.

2. *Lay-Off or Discharge Credits.*

If during the actionable period, an eligible woman was laid off or discharged by the Kearny Works organization, she shall be entitled to one credit for every two months of lay-off during the actionable period or one credit for every two-month period subsequent to her discharge during the actionable period. An eligible woman shall be entitled to a maximum of six credits for all lay-offs or discharges during the actionable period. These credits shall be known as the lay-off or discharge credits.

3. *Promotion Credits.*

(a) An eligible woman shall be entitled to one additional credit per month during the actionable period for each month of employment during the actionable period following a four-year period in which she did not receive and maintain a permanent upgrade at the Kearny Works organization prior to June 9, 1971. These credits shall be known as the promotion credits.

(b) The promotion credits shall only be earned while the eligible woman is employed at the Kearny Works organization. They shall not be earned while she has been laid off or discharged by the Kearny Works organization.

(c) The promotion credits shall not be earned once the eligible woman obtains and maintains a permanent grade of 38 or above, 208 or above, 508 or above or 681 or above. If such an employee receives a downgrade below grades 38, 208, 508 or 681 she shall again earn the promotions credits if she is otherwise entitled to them.

(d) The four-year period does not have to be an uninterrupted period. For example, if an eligible woman was hired as a grade 32 in January 1971, was promoted to grade 33 three years later (January 1974), and was then down graded to a grade 32 six months after her promotion (June 1974), she will be entitled to the promotion credit once she has remained a grade 32 for one more year, i. e., until June 1975. The same analysis shall apply to those downgraded below grades 38, 208, 508 or 681, if they are otherwise still entitled to promotion credits.

(e) The promotion credits are cumulative. If, for example, an eligible woman was hired as a grade 32 in June 1959 and had not received a permanent upgrade as of May 31, 1971, she will be entitled to three promotion credits per month commencing in June 1971. These would result from three four-year periods (June 1959—May 31, 1963; June 1963—May 31, 1967; June 1967—May 31, 1967; June 1967—May 31, 1971) during which she did not receive a permanent upgrade. If, by May 31, 1975, she still has not received a permanent upgrade, she will then be entitled to four promotion credits per month commencing in June 1975.

4. *Education Credits.*

(a) An eligible woman shall be entitled to one credit for each six-month period of employment during the actionable period subsequent to the month in which she obtained

a community college degree (or its equivalent) or four-year college degree if, at the end of that six-month period, she was not employed at a grade higher than 34 or 204, 504, or 641.

(b) The credits described in this section shall be known as the education credits.

5. For purpose of simplicity in determining formula credits, each eligible woman shall be deemed to have been employed on the first day of the month in which she commenced employment at the Kearny Works organization and to have been employed there as of the last day of the month in which she ceased employment there, for whatever reason.

6. The approximately 60 eligible women who have rejected applicant claims only, but who have not had their claims presented to any of the Special Masters for a hearing or had their claims reduced to judgment, shall each be awarded five credits. In the event Western Electric's records indicate that one or more of these approximately 60 eligible women had their applications for employment rejected on more than one occasion during the actionable period those women will be entitled to an additional five credits for each such rejected application. These credits for additional rejected applications will be limited to rejections occurring more than twelve months after any previous rejection.

7. In no event will any eligible woman who worked at the Kearny Works for a year or more receive less than a gross payment of $1,000.00 from the Settlement Fund; and it is further

ORDERED that no interest shall be paid on Judgments previously entered in this case in favor of the 108 class members who were rejected applicants; and it is further

ORDERED that interest on the Judgment entered in favor of Kyriaki Cleo Kyriazi shall continue until 90 days subsequent to the entry of an Order or Judgment disposing of the appeal now pending in this cause before the Court of Appeals for the Third Circuit; and it is further

ORDERED that the Fiscal Administrator is directed to compute the credits to which each eligible woman is entitled and also to compute the monetary value of those credits. Once that is done the Fiscal Administrator is to report to the Court that the assignment is complete. He shall then hold himself subject to further Order of this Court with respect to the distribution of the Settlement Fund. The Fiscal Administrator may also file interim reports to this Court on this assignment if it appears appropriate.